THE MAYOR AND ALDERMEN OF THE CITY OF SAVANNAH, plaintiff in error, *vs.* MILES D. CULLENS AND WIFE, defendants in error.

A municipal corporation, the owner of a market, the stalls of which it rents, is bound to keep the pavement in front of the stalls in a safe condition, and if a citizen of the corporation is injured through neglect of this duty, by the officers of the corporation, the corporation is liable to the extent of the injury received.

Case.    Motion for new trial.    Decided by Judge FLEM-MING.    Chatham Superior Court.    May Term, 1267·

Miles D. Cullens and his wife brought an action on the case against said corporation, to recover damages, because said wife had been injured by falling into a hole or inequality in the pavement of the public market of said city.

The evidence in the case was substantially as follows:

LEWIS J. B. FAIRCHILD, testified that he was in the market on the day of the accident; there were a great many people there, and the place was one much frequented; Mrs. Ann M. Cullens was next in turn, after himself, to be served; and after being served, in turning, fell, from stepping into the hole; the hole was on the south side of the market, in the pavement between the market-house and the bench, about opposite to Rutherford's store; unless a person was very careful, he would have been apt to have fallen into that hole; witness lifted her up, senseless; hole would have been concealed by the crowd; witness came near falling into it, himself; accident happened early in January, 1866. On cross-examination, witness stated that hole may have been two feet across. On direct examination resumed, witness

stated that the same morning was the first time he noticed the hole; and he noticed it because he came near falling into it before the accident to Mrs. Cullens.

Plaintiff next read the testimony of Mrs. MARY E. KERSH, taken by deposition, as follows: She did not know the plaintiffs; was in the market of the city of Savannah, on January 6th, 1866, and did see a lady fall into a hole in the pavement of the market; did not know, of her own knowledge, that it was Mrs. Cullens, but was so informed; the hole was in that part of the market which is on Congress street, about opposite Rutherford's store, and inside of the railing; the hole was quite large, nearly a yard one way, and a little less the other; the lady was buying some saussages at a stall or outside bench, with her back to the hole; just as she had placed these in the basket, and was turning away from the stall, she fell in the hole. Witness did not think, from all she could see, that the lady was guilty of negligence; it was a hole of irregular shape, quite deep, and dangerous to persons purchasing in that part of the market; that part of the market was often crowded with purchasers; the lady could not stand alone or bear her weight on her feet; they had to give her a seat until a carriage came and took her away; she was lifted up and carried by hand to the carriage; she could not walk at all. Witness could not state the exact nature of the injury Mrs. Cullens received, but she appeared to be in very great pain.

On cross-examination, this witness deposed that she did not think the lady was careless or negligent, because the hole was near the stall, and a person buying as she was, with others around her, at the stall or bench, could not well see or avoid the hole without exercising very great care; and persons buying goods in the market do not keep their eyes and attention fixed on where they are walking. Witness was looking at the lady when the accident was about to happen, and was making change for the sausages she had bought; and she fell just as she turned away from the bench; did not remember ever to have seen her before; a person walking along towards the hole could see it plainly,

unless the place was crowded; she remembered the day and month from the fact that her husband was taken sick the day before, and that on that day she had to employ some one in his place to assist her. The hole had been there a long time; how long she did not know.

WILLIAM MOREL, sworn on same side, testified that he saw Mrs. Cullens in bed, after the accident, suffering great agony; break in the pavement had been there a long time, and witness regarded it as dangerous; he had nearly fallen into it himself, and several times spoke of it as a dangerous place, and said that somebody would fall into it and hurt himself; Mrs. Cullens was the life and soul of her family; hole, of which he spoke, was near the bench outside the market-house, partly under and partly outside said bench. On cross-examination, this witness testified that the hole was not repaired until Mr. Brunner came into office as clerk of the market; it was about the size of two chairs put together; about six inches deep on one side and four inches on the other; he thought Mrs. Cullens was about fifty-eight years old; city had been in charge of the United States military authorities from 21st December, 1864, to November, 1865.

ISAAC BRUNNER, on the same side, testified that he was the present clerk of the market; that the hole was pointed out to him by the city marshal, Mr. Wayne; and that he had it repaired after he went into office as clerk, which was on the 12th January, 1866; the hole was from four to six inches deep; he had never noticed it before; supposed the cost of repairing it was not over a dollar and a half or two dollars. On cross-examination, stated his belief that the hole was about a foot square, and appeared to have been occasioned by the removal of a stone. The city was then, generally, in a bad condition, and much money had been spent in repairing, afterwards. On direct examination resumed, he stated that the hole was under the corner of the bench.

The depositions of Dr. JAMES S. MOREL, on the same side, were as follows: That he was a doctor of medicine, and had been a practitioner for thirty-four years; was called to see and professionally attend Mrs. Cullens, the plaintiff;

from her complaining of great pain in her hip, and the symptoms, declared a fracture of the neck of the thigh bone within the capsular ligament; attended her for a month or more; his charge was one hundred dollars; her condition had been one of pain, and she would probably be a cripple for life; with the advance of life, her condition would be attended with great inconvenience to herself and to her friends; had known Mrs. Cullens for many years; she was active in her habits, and the main stay of her family; and the accident which had deprived her of the use of her limbs had seriously injured her economical interests. Of her then present health he had nothing to say, except that she was unable to walk without artificial aid. On cross-examination, he stated that Mrs. Cullens was more than fifty years of age, and that bones are easily broken at that time of life, and that slight causes would sometimes produce a fracture.

MILES H. CULLENS, son of plaintiffs, on same side, testified that he knew nothing, personally, of the accident; but that, for six months after it, his mother was not out of her room; and that she was still suffering; she had, before the accident, been a person of active business habits, but, since, had been able to do nothing; she got about her room with crutches; she had no use of her limb, could not raise herself without aid, and would probably never recover her powers. On cross-examination, he stated he did not know his mother's exact age, but believed Mr. Morel had stated it about correctly. Did not know his mother's habits in reference to market; but that she had been to the market four or five times just before the accident.

By consent, plaintiffs then introduced statement of LYDE GOODWIN, formerly city marshal, to the effect that, from the rent of market stalls, he, as city marshal, had, in the month of December, 1865, paid into the city treasury one thousand dollars.

RICHARD T. GIBSON, on same side, testified that he was city treasurer from February, 1865, to the latter part of the same year. On the first of November, of that year, the city had in its treasury about sixteen hundred dollars; and, on

the first of December, about two thousand dollars. During the month of December, the sum of about sixteen thousand dollars was paid in. The proceeds of rice turned over to the city by Gen. Sherman, seem to have been about thirty-seven thousand dollars when Dr. Arnold went out of office as mayor of Savannah. The money, known as the rice fund, had been used in keeping up the city stores for support of the poor. On the cross-examination, he testified that the city was much out of repair when it was turned over by the military to the civil authorities; and the city authorities did the most important works of repair as soon as they could, including repairs of jail and guard house. Gen. Sherman came in on 21st December, 1864; and the city was not turned over to the civil authorities until the first of November, 1865. Taxes were laid, collected and expended by the military during that time. The city was in bad condition when turned over by the military; and the expenses for the city police, and other matters of the restored civil government, were heavy.

Plaintiffs having here closed their case, defendant introduced the following evidence:

JOHN R. JOHNSON, elected an alderman of the city on the first Wednesday of December, 1865, testified that, on the Monday thereafter, he was appointed chairman of the market committee, and that the market was then in bad condition, so far as respected the stalls and conveniences for selling. Pavements in and around the market were in fair condition. He had to borrow scales to do weighing. Repairs were made as soon as they could be done with limited means at command. His impression was, that the hole shown him, as the one which occasioned the accident to Mrs. Cullens, was not under the bench, and was about a foot square and six inches deep. As chairman of the market committee, he economized as much as he could, owing to the condition of the finances of the city. The hole in the pavement, above referred to, was not repaired until Mr. Brunner came in as clerk of the market; would not have noticed the hole if his attention had not been called to it.

Defendant then introduced, as a witness, EDWARD C. AN-
DERSON, mayor of the city of Savannah, who testified that
he was elected mayor of the city on the first Wednesday in
December, 1865, under an ordinance of the Convention of
Georgia, and had, under that and a subsequent election, been
mayor to the (then) present time.   On entering upon his offi-
cial duties, in the month of December, 1865, he found the
city in a chaotic condition, and without money to make
repairs much more important than repairs at the market.
Although the civil authorities of the city, in their efforts to
improve the condition of things, were promptly seconded by
the military, still there were embarrassments growing out of
the then new condition of affairs.   Until January or Febru-
ary, 1866, no system of repairs had been, or could be begun,
owing to financial and other difficulties.   The city was heav-
ily in debt, on outstanding bonds and coupons, and many
important necessities for repairs, had not yet (at the time of
giving his testimony) been met, in consequence of the embar-
rassments of the city.   Besides repairs on the jail and guard
house, those considered most deserving of prompt attention,
were the avenues to and from the wharves, for the purpose
of inviting commerce to the city, and to enable merchandise
to get to and from the shipping.   The stones from those
avenues had been removed during the war, for the purpose
of sinking cribs in the river, in order to obstruct the approach
of Federal vessels to the city.   Witness here verified his
official report as mayor, (with the city treasurer's report
annexed,) dated 1st October, 1866, and which was consid-
ered in evidence, as far as it might be used by either party.

Dr. RICHARD D. ARNOLD, also introduced for the defence,
testified that he was mayor of Savannah, from October, 1863,
to 11th December, 1865.   Military government prevailed in
Savannah from 21st December, 1864, to 1st November, 1865,
during which time the functions of municipal civil govern-
ment, in the city, so far as they were exercised, were exercised
by permission of the military.   The military laid, collected
and expended the taxes.   When he left the city government,
in December, 1865, the city was in as bad repair as it could

be; but the civil authorities were not to blame. No general system of repairs had been ordered, because the city had not the means. Witness here verified his official report as mayor, (with the city treasurer's report annexed,) dated 28th December, 1865, and which was considered in evidence, as far as it might be used by either party. The witness stated that, whilst, by the treasurer's report, there appeared to be in the treasury, on 1st December, 1865, a balance of only $2096 40, yet that, between that time and the said 28th December, 1865, there was an available cash balance of $37,204 33, including the money paid into the treasury on account of the rice aforesaid. He stated that the rice matter had been turned over to a committee, which had faithfully discharged its duty; and, whilst he knew there was litigation pending between the private owners of rice and the city, yet he thought said litigation embraced only a comparatively small portion of the proceeds. Witness further stated, that he knew the plaintiffs, and that they had been living in Savannah for the last fifteen or twenty years; and further, that the bones of a person of Mrs. Cullens's age break easily; sometimes from falling by a trip from a carpet. In November, 1865, he, as mayor of the city, issued a proclamation, requiring citizens to repair their side-walks; but the order was not generally enforced, owing to the poverty of the people. On the cross-examination, the witness testified to nothing not herein before stated as his testimony, except that the private owners of rice, or some of them, being dissatisfied with the compensation allowed by the city, had brought suit against the city.

EDWARD C. ANDERSON, re-called, testified that the fund, known as the rice money, never went into the current expenses of the city, and, after paying what might be due to private owners, was considered a fund for the support of the poor.

It was agreed that the record of the suit in said Superior Court, respecting the rice controversy, might be used in evidence; but it was not used by production of it before the Court or jury.

The case being closed, the same was argued by the respect-

ive counsel for the said plaintiffs and the said defendant;. defendant's counsel contending and arguing that a municipal corporation was not liable to be impleaded, at the suit of an individual or individuals, for or on account of any matter, cause or thing set out in plaintiffs' action; that there was not any thing on the face of the record in said cause, which showed a legal liability, on the part of said corporation, to the plaintiffs in said action; that, even if an individual might implead such municipal corporation, for or on account of any matter, cause or thing set out in the declaration, still, that no such suit would lie at the instance, or in behalf of a corporator of such municipal corporation, against said corporation; that said plaintiffs were not, in any event, entitled to damages, except on proof of gross negligence or neglect on the part of the defendant, and that there was no such proof in the cause; that, where the law creates a duty or charge, and the party is disabled to perform it, and has no remedy over, then the law will excuse him, and that in said cause there was proof of such disability on the part of the defendant, without its fault; that the plaintiffs could not, in any event, recover, unless Mrs. Cullens was, at the time of the accident, in the exercise of ordinary care; that the pleadings and proofs in said cause did not show any non-feasance, misfeasance, mal-feasance, injury, wrong or tort wrongfully committed or suffered by said defendant, in the premises, and showed no cause of action; that, under the evidence in said cause, the said municipal corporation, the defendant, had a legal discretion in determining what repairs in said city were most necessary to be done or made by said defendant, according to its means and opportunities, and that the exercise of said discretion, as proved in said cause, was not, under the circumstances, the subject of complaint or cavil, after such discretion had been honestly exercised, and that the proofs showed it had been honestly exercised; that it was not only shown that the hole or break in the pavement was the result of defendant's neglect or negligence, but that it was shown, by fair presumption, to have occurred during the military occupation and government of the city; and that the evi-

dence conduced to show, and did show, the exercise by defendant of a legal discretion in the premises, not the subject of review, revision or control by a jury; and the counsel of said plaintiffs arguing against said propositions as not applicable to the facts and law of the case.

After argument had, the Court charged the jury, that, to entitle the plaintiffs to recover, Mrs. Cullens must have been in the exercise of ordinary care at the time of the accident; that a municipal corporation was liable to suit by a private individual in a cause like that before the Court, and that such suit might be maintained, against the defendant, by an inhabitant of the city of Savannah; that the facts of the case, including the amount of damages, were questions for the determination of the jury; that whilst it was true that a disability to perform a duty created by law, and not by contract, would, in general, excuse performance, yet intimated or suggested to the jury that this case might form an exception, not only because the public market of Savannah was a thoroughfare, but because the corporation derived a revenue therefrom. To which charge, (and omissions to charge, as hereinafter stated,) counsel for defendant excepted.

The jury returned a verdict for the plaintiffs, and assessed damages against the defendant in the sum of two thousand dollars.

Whereupon, counsel for said defendant moved for arrest of judgment in said cause on the following grounds:

1st. Because the defendant, a municipal corporation, is not liable or subject to be impleaded, at the suit of an individual or individuals, for or on account of any matter, cause or thing set forth in the petition or declaration of said plaintiffs.

2. Because there is not anything on the face of the record in said cause, which shows a legal liability, on the part of said defendant, to the plaintiffs in said cause.

And, failing the motion in arrest of judgment on either of said grounds, then for a new trial in said cause, on the following grounds:

1st. Because, even if an individual or individuals may implead such municipal corporation, for or on account of any

matter, cause or thing set out in said plaintiffs' said petition or declaration; still, no such suit lies, at the instance or in behalf of a corporator or of corporators of such corporation, against such municipal corporation.

2d. Because the Judge erred in not charging the jury, on the point presented by defendant's counsel, to-wit: that plaintiffs were not, in any event, entitled to damages, except on proof of gross negligence or neglect on the part of the defendant.

3d. Because the Judge, whilst admitting, in his charge to the jury, that disability to perform a duty created by law, and not by contract, would excuse performance; yet, intimated or suggested to the jury, that this case might form an exception, not only because the public market of Savannah was a thoroughfare, but because the corporation derived a revenue therefrom.

4th. Because the pleadings and proofs in said cause did not show any non-feasance, mis-feasance, mal-feasance, injury, wrong, or tort, wrongfully committed or suffered by said defendant, in the premises; and showed no cause of action.

5th. Because the aforesaid intimations or suggestions of said Court to the jury, in respect to the supposed duty of the said defendant, as to the repair of said public market, were erroneous and illegal.

6th. Because the said charge was not only erroneous in the matters herein before stated, but also in that the Judge omitted to charge the jury, that, under the evidence in said cause, said defendant had a legal discretion in determining what repairs in said city were most necessary to be done or made by said defendant, according to its means and opportunities; and that the exercise of such discretion was not the subject of complaint or cavil, after such legal discretion had been honestly exercised.

7th. Because said charge was contrary to the law of said cause.

8th. Because said charge was against the evidence in said cause.

9th. Because the verdict of the jury was against the evi-

dence in said cause, not only because it was not shown that the hole or break in the pavement was the result of defendant's neglect or negligence, but that it was shown, by fair presumption, to have occurred during the military occupation and government of the city; and because the evidence conduced to show, and did show, the exercise by defendant of a legal discretion, in the premises, not the subject of review, revision or control by a jury in said Court; and because said verdict was against the weight of evidence in said cause.

10th. Because the verdict of the jury was against the law of said cause; especially in the matters and for the reasons herein before indicated.

The Judge having heard argument in vacation upon said motions and taken time to consider, in May, 1868, filed in office his refusal either to arrest the judgment or to grant a new trial.

The corporation now assigns as error said refusal, upon the grounds stated in the motion aforesaid and upon the further grounds, as follows: "11th. Said Judge erred in deciding that there was any peculiar duty or responsibility resting on the defendant in respect to repairs in, on, or around said public market, over and above other repairs in said city, shown by the evidence to have been of most importance, and when the evidence showed that, without its fault, defendant had not the means to make all necessary and proper repairs of the thoroughfares and public places in said city.

12th. The said Judge erred in deciding that, under the law and evidence in said cause, the defendant had not the legal discretion, without the right of review or control by a court or jury, to determine, under the actual circumstances proved on said trial, what repairs said corporation should first make in said city, with the limited means at its command; and especially, when there was no proof showing that the want of repairs in or around said public market or the pavements thereof, was caused or occasioned by said corporation or any of its servants or agents, or was known to it or them or any of them; and in further deciding that the

renting of stalls in said market, or the requirement that certain articles of food should be sold only thereat, raised an implied contract that said market had no defect in the pavement thereof." (The Judge's written reasons filed in office are the decisions alluded to in said grounds.")

EDW. J. HARDEN, (represented by the Reporter,) made the following citations: On the motion in arrest of judgment, 2 Hill, (S. C.,) 571; 3 Peters, 409, 2 Tenn., 667; 9 Mass., 247; Mayor, &c., vs. Henley, 1 Bing., N. C., 222; (27 E. C. L., 336,) 3 Hill, (N. Y.), 612. · As to whether a corporator could maintain the action; A. & A. on Corp., secs. ·97, 390, 629, 630; 1st Gr. Ev., sec. 331; 1st Chitty's Pl., (1833), 46; 18 Howard, 344, (note). To show that there must be gross neglect: Daniels vs. Potter *et al.*, 4 C. & P., 262; (19 E. C. L., 506), and 5 Sandford, (N. Y.), 303–4. As to inability to repair being · a good excuse: Broom's L. M., 118; 8 Tenn. R., 267; Story on B., sec. 56; 2d Parsons on C., 672–3; 2 Kernan, (N. Y.), 99. As to their discretion, etc.: W. on Corp., 313, sec. 817; 4 M. & S.> 27–29; 3 Howard, 98; 12 Peck, 193; 1 Denio, 595; 16 Peck, 190; 7 *Ga. R.,* 139; 11 *Ga. R.*, 221.

THOS. E. LOYD, for defendant in error, replied: Plaintiff in error owns the market; Dawson's Compilation, 427. None can sell certain meats elsewhere; Henry's Ordinances, 336. Therefore, they are liable for damage caused by their neglecting to repair, etc.: 2 Black's S. C. R., 422, 490; 16 N. Y. R., 158; 17 N. Y. R., 104; 5 Sandford's S. C. R., 289; 3 Hill, 612; 1 Selden, 369; *Tort* will lie against a corporation, *Mayor of Columbus vs. Goelchins,* 7 *Ga. R.,* 139; *Bishop & Parsons vs. Macon,* 7 *Ga. R.,* 200, *et seq.*

McCAY, J.

Although there may be found *dicta* that a corporation can not be sued for a *tort,* yet the authorities in support of the contrary doctrine are numerous ·and conclusive. Angel & Ames, sec. 382–385. Nor does a municipal corporation form any exception. The case of the Mayor of Lynn vs. Turner,

Cowper, &c., was against a municipal corporation for failing to repair and clean out a creek; indeed the old cases of suits against corporations for *torts* (that is, actions on the case for negligence,) are almost all against *municipal* corporations. See the cases cited in 16 East., 6.

If the wrong be a *mere* breach of public duty, and no damage to any one, no action lies. 4th Maule & S., 27.

As corporations almost always act by their agents, and as they, like private persons, are not liable for the willful trespasses of their agents, which they have not authorized or adopted, and which are not done in the course of the agent's performance of his duty, but few cases are found of actions of trespass against corporations for actual wrongs done, but the books are full of actions on the case against both public and private corporations, for damages caused by a *failure* of the corporation to perform some duty cast upon it by law. Chesnut, Hill & Co., vs. Rutter, 4 Ser. & Rawle, 6.

2d. There is no doubt, also, that one of the corporators may be the plaintiff in a suit against a corporation. The corporation is itself a *quasi* person, and even as respects one of its members, has a separate individuality. 2 Bay, 109; 5 Adol & Ellis, 866.

We think, therefore, that the motion in arrest of judgment was rightly overruled.

3. That there is a general duty upon the city of Savannah to keep its streets in repair, is, we believe, not questioned. Its defence, or rather its excuse, *as to the streets*, in this case, was a strong one. The law does not require impossibilities, and there is force in the argument, that when *all* could not be done at once, it was no breach of duty not to select, as the first to be repaired, any particular spot. On the other hand, the market was the *property* of the corporation, from which it derived a revenue, in the way of rents. Why was it not just as much bound to keep *that safe* as a merchant is the floor of his store? To keep the market in a safe condition, it being property, and used by the city for its revenues, was a *private* duty. It was the duty of a property holder, and the city stands, in this respect, upon the same footing as an

individual.   It must use its own, so as not to hurt its neighbors.

Whatever was the condition of the streets, it was its duty not to have a trap, on its *private property*, by which a citizen was injured.   We hold, therefore, that the Judge was right in his charge to the jury; that the market stood on a different footing from the streets, and that the excuse presented did not apply to it.

Judgment affirmed.