33755.   CAROWAY *v.* CITY OF ATLANTA *et al.*

Decided March 14, 1952—Rehearing denied April 1, 1952.

Poole, Pearce & Hall, J. R. Goldthwaite Jr., for plaintiff.

Gambrell, Harlan & Barwick, Robert R. Richardson, J. C. Savage, J. C. Murphy, J. M. B. Bloodworth, John E. Feagin, Henry L. Bowden, for defendants.

CARLISLE, J. (After stating the foregoing facts.) ■ A municipal corporation is not liable for a negligent performance of its governmental functions. Code, § 69-301; Roberts v. Mayor &c. of Savannah, 54 Ga. App. 375 (188 S. E. 39); City of Atlanta v. Garner, 56 Ga. App. 435 (192 S. E. 841). On the other hand, it is liable for the improper or unskillful performance of its ministerial functions. Code, § 69-301; Cornelisen v. City

*of Atlanta,* 19 *Ga. App.* 436 (91 S. E. 510) ; *Wright* v. *City Council of Augusta,* 78 *Ga.* 241 (a) ; *Adepe* v. *City of Thomasville,* 9 *Ga. App.* 880 (2) (72 S. E. 478). It is contended by counsel for the defendant municipality that the provisions of Code § 11-202 make the operation of an airport and an airport passenger terminal a governmental rather than a ministerial function, said Code section providing as follows: "Any lands acquired, owned, leased, controlled, or occupied by such counties, municipalities, or other political subdivisions for the purpose or purposes enumerated in section 11-201, shall and are hereby declared to be acquired, owned, leased, controlled, or occupied for public, governmental and municipal purposes."

Without statutory authority the city could not own or operate an airport. Therefore, the city has no authority other than that conferred upon it by statute and the additional authority to perform such acts as may be necessary to effectuate the authority given it by statute, although, where such authority is given, the fact that the agents of the municipality proceeded thereunder in an irregular or illegal manner will not relieve the municipality from liability. *Langley* v. *City of Council of Augusta,* 118 *Ga.* 590 (4) (45 S. E. 486). Code § 11-201, supra, empowers municipalities to own, operate, lease, and control airports. Certainly the operation of an airport passenger terminal would be incidental thereto. Section 5 (c) of the Uniform Airports Act, of which Code § 11-201 is a part (Ga. L. 1933, pp. 102, 103), specifically empowers municipalities to lease such airports and space, area, improvements, and equipment on such airports to private parties for operation, provided that the public is not deprived of equal use thereof. The right to lease these facilities is expressly contemplated in this section of the act; and while the legislature designated the acquisition, control, and operation of the airport as a governmental function, it did not designate the leasing by it to private corporations as a governmental function. Such a lease necessarily contemplates that revenue will be received by the municipality. There is nothing in the statute law which instructs a city as to what profit it may make in connection with such operation. The case, therefore, must turn on the question of whether or not that part of the Code section designating the acquisition and control of an airport as a governmental function

immunizes the defendant against liability in a case such as the one presently before us for consideration.

Taking the allegations of the petition as true—the city leased portions of the passenger terminal to private corporations for the purpose of obtaining revenue, and, as a part of the consideration, turned over to each of its lessees space in the terminal for their exclusive use; and in addition, as to each of them, undertook the responsibility of maintaining certain other central portions of the building for the use of the lessees and their customers by furnishing the same, providing lights and water, and keeping them clean, neat, orderly, sanitary, and presentable. Whatever obligation the municipal authorities might otherwise have had to provide these services to the public generally, it appears that they also provided them under contract to lessees as a source of revenue, since the consideration of the leases contemplated the rendition of these services on behalf of the lessees. It was held in *Davis* v. *City of Atlanta*, 84 *Ga. App.* 572 (66 S. E. 2d, 188), that where a city leases an amusement park to a private corporation for profit and at the same time retains a measure of control of the premises, it may, in the exercise of this ministerial function, be subject to suit. In *Mayor &c. of Savannah* v. *Cullens*, 38 *Ga.* 334 (95 Am. D. 398), where the municipality maintained a public market surrounded by stalls, which were leased out to individual purveyors for the purpose of revenue to the city, a petition by a customer who had entered the market to buy produce and who was injured by falling into a hole in the pavement provided by the city in front of the stalls, was held to state a cause of action, the court commenting: "The market was the property of the corporation from which it derived a revenue in the way of rents. Why was it not just as much bound to keep that safe as a merchant is the floor of his store? To keep the market in a safe condition, it being property, and used by the city for its revenues, was a private duty."

The transportation industry is traditionally a function of private enterprise in this country. It has been carried on in one form or another since the birth of this nation. To begin with, the transportation of passengers was by stagecoach operated by private industry. There was later a canal system, which was done away with by the advent of the railroads and thereafter

busses on the highways. Then came the airplanes. The maintenance and operation of an airport and, incidental thereto, an airport passenger terminal, is as much a part of the transportation business as any of its preceding enterprises. Air travel is now operating in competition with railroads, busses, and steamships. The steamship companies must keep their wharves and docks in a safe condition for their passengers. Railroads must keep their depots in a safe condition for their passengers. Bus transportation must keep its bus depots in a safe condition for its passengers. It follows, therefore, that where, as here, a city maintains an airport passenger terminal under Code § 11-201 and for a substantial profit, as a private ministerial and proprietary undertaking, and in competition with private business leases its facilities out while at the same time retaining the responsibility for maintenance of a portion of these facilities, it too, in order to escape liability, must keep the premises in its charge in a safe condition for the passengers of its lessees. As was held in Dysart v. St. Louis, 321 Mo. 514 (11 S. W. 2d, 1045, 62 A. L. R. 762): "An airport with its beacons, landing fields, runways, and hangars is analogous to a harbor with its lights, wharves and docks; the one is the landing place and haven of ships that navigate the water, the other of those that navigate the air." See also 63 C. J. S., Municipal Corporations, § 911; *Bynum* v. *Mayor &c. of Savannah*, 33 *Ga. App.* 502 (126 S. E. 857).

In Ex Parte Houston, (Okl. Cr. App.) 224 Pac. 2d, 281, 301, the court made the following pertinent statement in regard to the Uniform Airports Act: "It is believed that it would be at once apparent to anyone after a thoughtful perspective of the relationship of an airport of one state with that of another, of the desirability, even the necessity, if aviation is to properly expand and succeed, for the adoption of uniform airport laws throughout the United States. And where substantially such laws have been so adopted it is our thought that the courts of the various states should seek a harmonious interpretation of the provisions." The court then held that "The apparent purpose of the Legislature in declaring that airport operation is a public and governmental function is directed to the powers granted counties and the general rule restricting activities of

counties to public and governmental purposes as subdivisions of the State . . and that it was the intent of the Legislature to declare that the occupation, construction, operation and maintenance of an airport by a municipality was a governmental function in the sense that it was a public purpose, thus bringing the Act within the constitutional provisions." In Granite Oil Securities Inc. v. Douglas County (Nev.) 219 Pac. 2d, 191, 16 A. L. R. 2d, 1069, a Nevada court held that this section of the act was "simply in justification of the powers granted." In Rhodes v. City of Asheville, 230 N. C. 135, 136 (52 S. E. 2d, 371), the North Carolina court held that the section of the act declaring the acquisition, establishment, construction, enlargement, improvement, maintenance, and the exercise of any other powers therein granted to municipalities, to be a public, governmental, and municipal function exercised for a public purpose and matters of public necessity, meant that it "was a governmental function in the sense that it was a public purpose." On rehearing (see Rhodes v. Asheville, 230 N. C. 759, 53 S. E. 2d, 313), the following statement was made: "We cannot attribute to the language used the force and effect urged by appellants. Instead, we must construe it in such manner as to bring it within the legislative authority of the General Assembly and make it consistent with the validity of the statute in which it is used." The States of Florida and West Virginia also have enacted forms of the Uniform Airports Act containing substantially similar provisions. Both of those States have held that the functions of the municipality or county in exercising control over the operations of an airport under this act are of a proprietary nature, the former expressly and the latter by implication. See Miami Beach Airline Service v. Crandon, 159 Fla. 504 (32 So. 2d, 153, 172 A. L. R. 1425); County Court of Harrison County v. West Virginia Air Service (W. Va.) 54 S. E. 2d, 1. The interpretation of this section of the Uniform Airports Act as adopted by judicial construction in the above States is considered to be sound and is adopted by this court.

Counsel for the defendants in error rely upon *Delta Air Corp.* v. *Kersey,* 193 *Ga.* 862 (3) (20 S. E. 2d, 245, 140 A. L. R. 1352), but the construction and constitutionality of Code (Ann. Supp.) § 11-202 were there expressly not passed upon, as the case was

798

decided on other grounds. The case of *Mayor &c. of Savannah v. Lyons*, 54 *Ga. App.* 661 (189 S. E. 63), is not controlling, in that there the charter amendment of the City of Savannah, where the airport was located, authorized the governing authorities of the municipality to use any portion of a city park as a landing field, and it appeared that the landing field in question was considered as a park; and further the petition did not sufficiently allege that the airport was operated primarily as a source of revenue. The present petition is not subject to these defects, and sets forth a cause of action as against the defense that the municipality was in the exercise of a purely governmental function.

■ The petition alleged: that the floor of the waiting room on which the plaintiff slipped and fell was covered with composition material in large alternating squares of contrasting colors; that it had been freshly waxed and highly polished over its entire surface; that the plaintiff slipped at a spot where a thin cake of wax of considerable area had been liberally applied and not properly distributed; that this thin cake of wax was superficially polished and transparent, so that it was invisible to a person walking toward it in an ordinarily careful and prudent manner, and had little, if any, difference in color, surface and appearance from the surrounding floor; and that it was exceedingly slick, slippery and treacherous, and constituted a menace to any person crossing the floor in an ordinarily prudent manner. These allegations are sufficient as against the defense that the plaintiff was not in the exercise of ordinary care in failing to observe and avoid the slippery portion of the floor. See *Bryant v. S. H. Kress & Co.*, 76 *Ga. App.* 530 (46 S. E. 2d, 600); *Mattox v. Lambright*, 31 *Ga. App.* 441 (120 S. E. 685); *Haverty Furniture Co. v. Jewell*, 38 *Ga. App.* 395 (144 S. E. 46); *F. W. Woolworth Co. v. Wood*, 32 *Ga. App.* 575 (124 S. E. 110); *Macon Academy Music Co. v. Carter*, 78 *Ga. App.* 37 (50 S. E. 2d, 626).

The trial court erred in sustaining the general demurrer and dismissing the petition.

*Judgment reversed. Gardner, P.J., and Townsend, J., concur.*