JOHN BAROVICH, Plaintiff and Appellant, v. CITY OF MILES CITY, a Municipal Corporation; CUSTER COUNTY, a Body Politic and Corporate; SIG UGRIN, Airport Manager, Defendants and Respondents. M. A. SMITH, Plaintiff and Appellant, v. CITY OF MILES CITY, a Municipal Corporation; CUSTER COUNTY, a Body Politic and Corporate; SIG UGRIN, Airport Manager, Defendants and Respondents.

No. 9797.
Submitted April 14, 1959. Decided June 18, 1959.
340 Pac. (2d) 819.

Colgrowe & Brown, Hugh J. Lemire, Miles City, for appellants. Hugh J. Lemire argued orally.

John R. Carr, Miles City, Coleman, Lamey & Crowley, Bil-

lings, James P. Lucas, Miles City, for respondents. Cale J. Crowley, Billings, argued orally.

MR. JUSTICE CASTLES:

This is a consolidated appeal from two judgments on identical complaints to which demurrers were sustained, appellants refused to plead further; and judgments were entered on the demurrers dismissing the actions.

The amended complaints alleged that the appellants, while practicing night landings in an airplane, collided with an unmarked and unlighted windrow of sand some distance beyond the edge of the runway of an airport operated jointly by respondents County and City under authority of R.C.M. 1947, section 1-821, by means of a city and county airport commission. Attached to the amended complaint was a copy of an agreement under which the appellants contend that respondent Ugrin was an independent contractor for maintenance and repairs of runways. Under that agreement, respondent Ugrin and one Zupan leased and controlled and maintained at their own expense the buildings and hangar facilities *only* at the airport. In addition, respondent Ugrin alone was designated as airport manager operating under the city and county airport commission.

The complaint alleges that all three respondents, City of Miles City, Custer County, and Ugrin were in the course of repairing, maintaining, or improving a runway on the day of the accident, October 12, 1953, and were guilty of negligence in failing to mark and light the aforementioned windrow adjacent to the edge of the runway and that such negligence caused the damages complained of.

The specifications of error raise two questions:

(1) As to whether the respondents City and County are immune from liability; and (2) whether respondent Ugrin was an agent of the City and County or an independent contractor.

The appellants largely abandoned the first question on appeal, both in their brief and in oral argument. We shall sum-

marily dispose of this contention by referring to R.C.M. 1947, section 1-822, which expressly declares airport operation under the act as being public and governmental. This court has many times held that cities and counties are immune from tort liability when exercising governmental functions. See Kingfisher v. City of Forsyth, 132 Mont. 39, 314 Pac. (2d) 876; Rhoades v. School District No. 9, 115 Mont. 352, 142 Pac. (2d) 890; Coldwater v. State Highway Commission, 118 Mont. 65, 162 Pac. (2d) 772; Holland v. Western Airlines, D.C. Mont. 1957, 154 F. Supp. 457.

In addition, even if in spite of the statutory declaration of governmental function as to airports, the Legislature has granted express statutory immunity to cities and counties in airport operation in R.C.M. 1947, section 1-502, which, in part, provides:

"No action or suit sounding in tort shall be brought or maintained against the state or any municipality thereof, or the officers, agents, servants, or employees of the state or any municipality thereof, on account of any act done in or about the construction, maintenance, enlargement, operation, superintendence or management of any airport or other air navigation facility."

The principal contention of the appellants is as to the second question. The lease agreement was in two parts; that is, first, Ugrin was airport manager responsible to the City-County Airport Commission for the operation of all the field, except the hangar and buildings; secondly, he was a lessee, along with one Zupan, of the buildings and hangar facilities alone.

In this latter phase, no accident occurred on those premises nor is any negligent conduct complained of.

If Ugrin was an officer, agent, servant or employee of the City and County, he would be immune from tort liability under R.C.M. 1947, section 1-502, which relieves "officers, agents, servants, or employees" of a city or county from any liability whatsoever.

If, on the other hand, he was an independent contractor he

would be liable in tort. This necessitates an analysis of the amended complaint in part.

Paragraph III and IV alleged:

"That at all times herein mentioned in this complaint the defendant, Sig Ugrin, was and now is the Airport Manager of the Miles City Airport in Custer County, Montana, and pursuant to the hereinafter referred lease agreement, said Sig Ugrin had and now has the full care and responsibility of the management of the airport; that pursuant to said lease agreement *said Sig Ugrin was and now is responsible to the Miles City Airport Commission for the operation and management of the airport;* and the Miles City Airport Commission was and now is a duly appointed board or commission pursuant to the duly adopted resolutions of the City of Miles City and County of Custer and the agreement for joint action entered into by the City of Miles City and County of Custer under date of June 17, 1948.

"IV. That on the 12th day of October, 1953, and during the whole day thereof the Miles City Airport located north of the City of Miles City and north of the Yellowstone River was operated by the defendants City of Miles City and Custer County jointly under the provisions of Section 1-821, R.C.M. 1947, *by and through its duly appointed commission 'Miles City Airport Commission'* and lease agreement dated May 1, 1953, between Miles City Airport Commission as party of the first part and Sig Ugrin and Matt Zupan as parties of the second part; that said City of Miles City and said County of Custer through its duly appointed commission the 'Miles City Airport Commission' on the 1st day of May, 1953, entered into a lease agreement with Sig Ugrin and Matt Zupan pertaining to the Miles City Airport, a copy of which is attached hereto, marked Exhibit 'A' and by specific reference made a part hereof; that pursuant to said lease agreement and as consideration therefor Sig Ugrin personally individually at all times mentioned in this complaint was and now is the Airport Manager and as such had and now has the full care and responsi-

bility of the management of the airport and authority to do all things and make all decisions of matters that arise in connection with his management, including the supervision of the runways; that pursuant to said lease agreement and as consideration therefor said Sig Ugrin personally and individually at all times mentioned in this complaint was and now is responsible for the operation and management of said airport, including the supervision of its runways and obligated to make a monthly report to the Miles City Airport Commission as to the general conditions of the airport and its facilities; that under said lease agreement it became the duty of said Sig Ugrin, Airport Manager, as one of said lessees to keep the runways and adjacent area free and clear of any obstructions which might in any manner endanger aircraft in using said airport.'' Emphasis supplied.

Paragraph V then alleges that at 9:30 p.m., October 12, 1953, the airplane landed on the northwest-southeast runway, cleared the runway by turning right, and then collided with an unmarked and unlighted windrow about six feet beyond the edge of the runway.

Paragraph VI alleges that the three defendants had been placing a seal coat on the runway; that the said defendants carelessly and negligently left the windrow in darkness; that such was a violation of standard airport procedure.

The foregoing allegations quoted and referred to allege in effect that all three defendants, Sig Ugrin, as airport manager, and the City and County through their Airport Commission, were jointly in charge of, and responsible for, that portion of the airport where the accident occurred out on the runways, and where the negligence is alleged to have been committed.

The appellants then rely on the aforementioned Exhibit A, which we analyze as follows:

The Miles City Airport Commission is party of the first part, and two men, Ugrin and one Zupan, are parties of the second part. The description of the particular property leased and let is then set forth as:

"The existing hangar facilities belonging to the party of the first part, including the main hangar, the shop building located immediately south of said main hangar, and the blockhouse, but excluding the one ship hangar immediately north of the CAA buildings."

The portion of the airport leased and let to Ugrin and Zupan is definite and specific. It does not include the runway, the place where the accident occurred, or the place where the alleged negligent conduct occurred, or any part of the airport except the portion particularly described. As to that portion of the airport leased and let, Ugrin and Zupan were required to furnish their own heat, electricity and maintenance, but they could not sublet without consent, and were required to maintain by the provision relieving them from reasonable wear, tear and damages by the elements alone.

Paragraph 2 then specifies the consideration to be paid by Ugrin and Zupan for use of that particular portion of the airport leased and let, which does not include the place of accident:

"2. The parties of the second part agree to pay to the party of the first part as rental for the use of *said leased premises.*" Emphasis supplied.

The agreement then creates the dual status referred to by providing:

"3. That Sig Ugrin shall be airport manager, and as such he shall have the full care and responsibility of the management of the airport, and have authority to do all things and to make all decisions of matters that may arise in connection with his said management and the parties of the second part *shall at all times be responsible to the party of the first part for the operation and management of such airport;* that the airport manager and the parties of the second part shall make a monthly report to the party of the first part at their regular monthly meeting on the first Monday of each month as to the general conditions of the airport and its facilities." Emphasis supplied.

Ugrin and Zupan were expressly allowed to use that portion

of the premises leased and let for the sale of gas, oil, other products, and services, all for profit.

Ugrin and Zupan were required to carry insurance on the premises leased and let, where no accident occurred. The City and County could carry their own.

The agreement also provided:

"8. * * * That if the party of the second part, or its airport manager, should fail to perform the terms and conditions of this agreement, or do any act not authorized by this Agreement, that then upon ninety days' notice in writing, to the parties of the second part, this Agreement may be ended and terminated."

On several occasions we have been called upon to determine the relationship of master and servant and independent contractor. Greening v. Gazette Printing Co., 108 Mont. 158, 88 Pac. (2d) 862; Jensen v. Barbour, 15 Mont. 582, 39 Pac. 906; Shope v. City of Billings, 85 Mont. 302, 278 Pac. 826; Poor v. Madison River Power Co., 38 Mont. 341, 99 Pac. 947, 953; Allen v. Bear Creek Coal Co., 43 Mont. 269, 115 Pac. 673; Harrington v. H. D. Lee Mercantile Co., 97 Mont. 40, 33 Pac. (2d) 553. It will be noted in these cases that many factors must be considered in deciding whether the relationship of independent contractor exists. No hard and fast rule can be applied to any case. Each depends upon its particular facts. But, it must always be borne in mind that the main distinction between servant or employee and an independent contractor lies in the right of control over the performance of the work. Greening v. Gazette Printing Co., supra; 56 C.J.S. Master and Servant, section 3 (2), page 45.

A contractee-independent contractor relationship presupposes a contract between the parties involved, and when that question arises or is presented for determination, resort must be made, in the first instance, to the contract. "It is the wording of the resolution [contract] that controls rather than the allegations of its effect when the wording does not justify the conclusion asserted in the allegations." Bidlingmeyer v. City

of Deer Lodge, 128 Mont. 292, 299, 274 Pac. (2d) 821, 825. Here, there is a written lease, and it controls if it can be determined therefrom, the intention of the parties. R.C.M. 1947, section 13-702; 56 C.J.S. Master and Servant, section 3(2), page 47. Of course, if the contract is ambiguous, then it is pertinent to take into consideration conduct of the parties and all of the surrounding circumstances. 56 C.J.S. Master and Servant, section 3(2), page 48.

It is clear from an examination of the lease that it covers two situations, namely:

(1) The leasing only of the hangar facilities, of the airport, specifically mentioning them, exclusive of the runways and ground adjacent thereto; and

(2) The designation of Ugrin, one of the lessees of the hangar facilities, as airport manager, he to have supervision over the airport not specifically leased.

And, in naming Ugrin as airport manager only, it is an indication that the parties had in mind the statute relating to the operation of airports, R.C.M. 1947, section 1-812, subd. (b), which authorizes municipalities to enter into an agreement with a person for the operation of an airport "as agent of the municipality." This seems apparent by the designation of Ugrin as "manager" which term in itself implies that he is to be the agent of the Airport Commission. See definition of the word "manager" in Commissioner of Internal Revenue v. N. B. Whitcomb Coca-Cola Syndicate, 5 Cir., 1938, 95 F. (2d) 596, 598. Had the parties intended that Ugrin occupy a different capacity than that of agent, they could have easily said so.

Then, we look to see wherein the right of control over the performance of work lay.

Appellants argue in their brief that: "In this case the municipality has delegated its authority to an airport commission but the expense of maintenance was still its responsibility. The Commission in turn entered into a lease arrangement with Ugrin and Zupan for the operation of the airport but not as its

agent. The lease arrangement indicates the expense of maintenance was retained by the Commission.''

This is only partially accurate. Ugrin and Zupan had the obligation and expense of maintenance of the particularly described portion leased to them. Exhibit A did not let or lease to them the balance of the airport. It made Ugrin manager only. The Commission retained the obligation and expense of maintenance of the balance of the airport where the alleged negligence occurred.

There is nothing in the agreement divesting the Commission of authority over anything except the premises let. It is significant that there is a total absence of any clause or condition suggesting the intent to create a relationship of independent contractor, or expressly or impliedly divesting the City or County of any right of control, or any right of maintenance or improvement, over those facilities other than the hangar and buildings. Certainly the City and County could not divest itself of its duty to spend the tax dollars in statutory funds for such purposes.

There is no contract here relating to the maintenance of the runways. It is absolutely silent concerning such work. Under the statute, section 1-803, R.C.M. 1947, the County and City operating the airport are chargeable with the expense of maintenance thereof. It therefore seems clear that if they were to be released from this obligation the contract would have so stated. Certainly, if Ugrin was to bear this burden, he would have had it specifically mentioned. The absence of these important items, and others, in the contract supports the position that it was the intention of the parties that the City and County should still retain the right of control over the maintenance of the runways and the grounds adjacent thereto, and that Ugrin would only represent them in the management of the airport not specifically leased.

A fair reading of the pleadings and Exhibit A indicates clearly that the right of control remained in the City and County as to all except the leased premises.

For the foregoing reasons, the demurrers to the complaint were properly sustained as to all three defendants. The judgment is affirmed.

MR. CHIEF JUSTICE HARRISON, and MR. JUSTICES BOTTOMLY, ANGSTMAN and ADAIR, concur.