**Paulette BOWLING, Plaintiff,**

**v.**

**CITY OF ROANOKE, a municipal corporation, and Piedmont Aviation, Inc., a North Carolina corporation, Defendants.**

**Civ. A. No. 81–0481(R).**

United States District Court,
W.D. Virginia.

July 26, 1983.

John D. Copenhaver, Roanoke, Va., W.A. Thornhill, III, Beckley, W.V., for plaintiff.

James R. Austin, Roanoke, Va., Virginia Powell, Hunton & Williams, Richmond, Va., Wilburn C. Dibling, Jr., City Atty., Roanoke, Va., for defendants.

## MEMORANDUM OPINION

TURK, Chief Judge.

Paulette Bowling (Bowling) brings this diversity action, see 28 U.S.C. § 1332, alleging that she was injured as a result of the negligence of defendants City of Roanoke, Virginia (Roanoke) and Piedmont Aviation, Inc. (Piedmont). This action is now before the court on Roanoke's motions to dismiss Bowling's complaint and Piedmont's cross-claim on the grounds that it is entitled to governmental immunity from tort liability. For the reasons stated herein, the court denies the motions to dismiss.

The relevant facts as alleged in the complaint are as follows. Roanoke owns and operates a municipal airport known as Woodrum Field. Roanoke leases a portion of the facility to Piedmont.

On February 1, 1981, while on the premises as a business invitee, Bowling was injured when she slipped and fell on some ice. She contends that her injuries were proximately caused by the negligence of both defendants in failing to keep the property free of ice and in a state of good repair.

Bowling filed this action on November 24, 1981. On December 8, 1981, Roanoke filed its motion to dismiss the complaint for failure to state an actionable claim. On January 26, 1982, Piedmont filed its answer denying liability to Bowling and a cross-claim alleging that any injuries sustained by Bowling were caused by the negligence of Roanoke. Roanoke then filed a motion to dismiss Piedmont's crossclaim for failure to state a claim upon which relief can be granted. In support of its motions to dismiss, Roanoke contends that it is entitled to sovereign immunity from liability for its alleged negligence in operating and maintaining Woodrum Field.

Under Virginia law, a municipality is immune from liability for negligence in the exercise of its governmental functions, but it may be liable for negligence in the exercise of its proprietary functions. *Freeman v. City of Norfolk*, 221 Va. 57, 266 S.E.2d 885 (1980); *Transportation, Inc. v. City of Falls Church*, 219 Va. 1004, 254 S.E.2d 62 (1979). Roanoke, of course, contends that its maintenance and operation of Woodrum Field is a governmental function.

The Supreme Court of Virginia apparently has not addressed the question whether a municipality may be subjected to tort liability in connection with its ownership and operation of an airport. So the court must attempt to predict how the Supreme Court of Virginia would resolve this issue. *GAF*

Corp. v. County School Board of Washington County, Virginia, 629 F.2d 981 (4th Cir.1980).

"It is the prevailing view in this country that the operation and maintenance of an airport constitutes a proprietary function on the part of a municipality. . . ." *Crawford v. City & County of Denver*, 278 F.Supp. 51, 52 (D.Colo.1967); *see generally* Annot., 66 A.L.R.2d 634 (1959). After considering how state law characterizes other municipal activities, the court predicts that, absent a statute to the contrary, Virginia would follow the prevailing view that a municipality may be held liable for its negligence in maintaining and operating a municipal airport on the ground that the maintenance and operation of a municipal airport constitutes a proprietary rather than a governmental function.

■ Under Virginia law, a municipality acts in a governmental capacity in regulating the use of sidewalks and streets, but in a proprietary capacity in constructing and maintaining sidewalks and streets. *See Hoggard v. City of Richmond*, 172 Va. 145, 200 S.E. 610 (1939). Bowling's alleged injury occurred in the area where passengers deplane. Roanoke allegedly had a duty to maintain this area in good repair. Roanoke's function in maintaining this area is similar to its function in maintaining sidewalks. This suggests that Roanoke acts in a proprietary capacity in operating and maintaining its airport.

■ The operation of a wharf for profit is also a proprietary function. *City of Petersburg v. Applegarth*, 69 Va. (28 Gratt.) 321 (1877). This further supports the court's view that the operation of a municipal airport is a proprietary function. "The function of an airport is to maintain facilities for the use of ships of the air, just as port terminals or wharves are maintained for use of the ships of the sea." *Rhodes v. City of Asheville*, 230 N.C. 134, 141, 52 S.E.2d 371, 376, *reh. denied*, 230 N.C. 759, 53 S.E.2d 313 (1949). "An airport with its beacons, landing fields, runways, and hangers is analogous to a harbor with its lights, wharves and docks. . . ." *Caroway v. City of Atlanta*, 85 Ga.App. 792, 796, 70 S.E.2d 126, 130 (1952).

■ Nevertheless, Roanoke argues that its position is supported by the language of Va.Code § 5.1–33 (1983 Repl.Vol.) and an order entered by the Honorable Ernest W. Ballou on May 5, 1980, in *Gorham v. Piedmont Aviation, Inc., et al.*, At Law No. 5744 (Circuit Court for the City of Roanoke, Virginia). Section 5.1–33 provides:

Public purpose declared.—Any lands, easements or privileges acquired, owned, controlled or occupied by any cities, incorporated towns and counties of the Commonwealth under the provisions [concerning municipal and county airports] are hereby declared to be acquired, owned, controlled or occupied for a public purpose, and as a matter of public necessity; and such lands, easements and privileges so acquired, owned, controlled or occupied are hereby declared to be acquired, owned, controlled or occupied for public, governmental and municipal purposes, and to be within the definition of property acquired for public uses as such term is used in Article I, § 11, of the Constitution of Virginia.

In *Gorham*, Judge Ballou, relying on the authority of section 5.1–33, held that the ownership, maintenance, and operation of an municipal airport is a governmental function. Accordingly, he sustained the City of Roanoke's demurrer on the ground of sovereign immunity.

Like the Roanoke Circuit Court, courts in Montana, Texas, Utah, and West Virginia have construed similar statutory provisions as legislative declarations that the operation of a municipal airport is a governmental function for purposes of tort immunity. *See Barovich v. City of Miles City*, 135 Mont. 394, 340 P.2d 819 (1959); *City of Corsicana v. Wren*, 159 Tex. 202, 317 S.W.2d 516 (1958); *Wade v. Salt Lake City*, 10 Utah 2d 374, 353 P.2d 914 (1960); *Van Gilder v. City of Morgantown*, 136 W.Va. 831, 68 S.E.2d 746 (1952).

Other courts, however, have held that municipalities are not immune from liability

for negligence in maintaining and operating an airport despite the presence of a statute declaring that such activities are governmental and public functions. *See Anderson v. Jackson Municipal Airport Authority,* 691 F.2d 742 (5th Cir.1982) (following Mississippi Supreme Court's answers to certified questions of law); *Caroway v. City of Atlanta, supra; Brown v. Sioux City,* 242 Iowa 1196, 49 N.W.2d 853 (1951); *Wendler v. City of Great Bend,* 181 Kan. 753, 316 P.2d 265 (1957); *Brasier v. Cribbett,* 166 Neb. 145, 88 N.W.2d 235 (1958); *Granite Oil Securities v. Douglas County,* 67 Nev. 388, 219 P.2d 191 (1950); *Rhodes v. City of Asheville, supra.* These courts reasoned that the statute was a declaration of the public purpose of such activities, in justification of the powers granted to municipalities to construct and operate airports, and not a declaration of immunity from liability for torts committed during the exercise of such powers. For example, the court in *Caroway* stated that:

> Section 4 of the Uniform Airports Act, ... which provides that lands acquired, controlled, or occupied as landing fields for the use of aircraft shall be so acquired or controlled for public, governmental, and municipal purposes, was intended to be a declaration on the part of the Legislature of the public purpose as to which the authorization was given, and not a limitation immunizing such municipalities from suit regardless of circumstances.

85 Ga.App. at 792, 70 S.E.2d at 127–28.

Although this court is not bound by Judge Ballou's interpretation of section 5.1–33, *see King v. Order of United Commercial Travelers of America,* 333 U.S. 153, 68 S.Ct. 488, 92 L.Ed. 608 (1948); *Maryland Casualty Co. v. Burley,* 345 F.2d 138 (4th Cir.1965), *Gorham* would be entitled to some weight in deciding whether the operation and maintenance of a municipal airport is a proprietary or governmental function were it not for the Virginia Supreme Court's decision in *Virginia Electric & Power Co. v. Hampton Redevelopment and Housing Authority,* 217 Va. 30, 225 S.E.2d 364 (1976). The plaintiffs in *Hampton* alleged that they were injured as a result of the negligence of the power company and the housing authority. The housing authority contended that it was immune from tort liability. It relied on a statute which declared that the functions of the housing authority were "governmental functions of grave concern to the Commonwealth." Va.Code § 36–2(1) (1976 Repl.Vol.).

The Supreme Court of Virginia agreed with the trial court that the operation of a housing project would normally be a proprietary function. The question was whether the statute converted the authority's operation into a governmental function, rendering the authority immune from tort liability. The court held that the intent of the statute was only to declare that the activities of housing authorities are proper functions of government, not to grant sovereign immunity to housing authorities. The court further held that even if the statute was interpreted as a declaration of immunity, the declaration would not be conclusive. Virginia courts should examine the nature of the municipality's activity to determine whether the activity is proprietary or governmental. In discussing the weight to be given section 36–2(1), which contains language similar to that found in section 5.1–33, the court stated:

> The question, however, is whether, in its reference to "governmental functions," the General Assembly meant to grant immunity from tort liability or merely intended to declare that the activities of housing authorities are proper functions *of* government, thereby emphasizing the public purposes of such authorities and reinforcing the justification for the expenditure of public funds for those purposes. We believe only the latter was intended.

> To the extent, however, that the statutory language in question might constitute a legislative declaration that, for tort immunity purposes, the activities of a housing authority are governmental functions, the declaration is not conclusive; the courts are not thereby precluded from looking behind the declaration to ascertain the true nature of the func-

tions.... We feel ... free ... to inquire here into the nature of the operation and maintenance of the municipal housing project to determine whether such activity is truly a governmental function, so as to support the present claim to immunity from liability for negligence.

*Id.* at 35, 225 S.E.2d at 368–69 (citations omitted).

In view of *Hampton,* neither the language of section 5.1–33 nor the order in *Gorham* persuades this court to hold that a municipality operating an airport acts in a governmental capacity. Rather, the court concludes that, when faced with the issue, the Supreme Court of Virginia would hold that a municipality operating and maintaining an airport acts in a proprietary capacity and may be liable for its negligence occurring in connection with such activities. Accordingly, Roanoke's motions to dismiss the complaint and cross-claim on the grounds of governmental immunity will be denied in an order to be entered this day.