25560. MAYOR & ALDERMEN OF SAVANNAH *v.* LYONS.

DECIDED NOVEMBER 28, 1936.

*Shelby Myrick, J. C. Hester,* for plaintiff in error.
*Oliver & Oliver,* contra.

STEPHENS, J.   J. H. Lyons brought a suit in tort against the Mayor and Aldermen of the City of Savannah, for personal injuries alleged to have been received by him as a result of the defendant's negligence. In the petition as amended it was alleged that in 1927 and 1929 the legislature passed acts authorizing the defendants to construct, operate, and maintain a flying field, and all things necessary as accessories thereto, without the corporate limits of the city, to charge for admission and fees for their use, and to place employees in control of the field and its amusement and recreation facilities; that the defendant bought certain land on which were constructed various buildings, parking spaces, road-ways, and other accessories; that on November 6, 1929, the defendant in council assembled adopted a resolution authorizing the purchase of a plat of 40 acres adjoining the Savannah Airport, and on November 15, 1929, a deed was executed conveying to the defendants that tract of land bordering 990 feet on the eastern line of the airport proper and 1320 feet on the western boundary of the Middleground Road, said tract embracing that land on which the city erected the beacon light, around which light run the road-

ways on which occurred the accident more particularly described; that the city provides the parking spaces and roadways on the lands just described, for the use of the general public both day and night, and for the use of all persons coming to the city by airplane, who must of necessity use the parking spaces, roadways, and facilities, for which use the city has the privilege of charging and affords police protection; that for a valuable consideration the city has leased to the Eastern Air Transport Incorporated the privilege of using the airport, its accessories, roads, parking spaces, and accommodations, this company being engaged in the business of transporting passengers, freight, and mail for hire, and using the landing field, roadways, and parking spaces to carry on its business; that the city grants to an oil company, for a compensation to the city, the privilege of selling gas, oil, and other commodities to automobiles, to the airplanes of the Eastern Air Transport Incorporated, and to other airplanes using the airport facilities, the city receiving a stipulated sum on all oil and gas sold; that the airport has been placed under the control of the city engineer, who is charged with the duty of inspecting and keeping in repair all properties of the city; that on a part of the property purchased and maintained by the city as a part of the airport are the roadway and parking spaces lying west of the Middleground Road, affording access to and parking space for that part of the airport where airplanes land, and a short distance east of the parking space near the waiting-rooms is a circular park around which the paved roadway runs, and near the eastern end of the circular park, and slightly to the right of the center of the paved roadway, the city permitted the pavement to become broken, defective, and dangerous, with three or four large holes measuring from three to five feet wide and from six to ten inches deep, which holes had existed for months and such a length of time that the city was charged with notice thereof; that a map of the entire airport is attached; that the beacon light in the center of the circular park shed no light on the pavement, and the dangerous roadway was not illuminated; that on August 4, 1935, about 12:30 a. m., the plaintiff rode out to the airport on a motorcycle with a lady passenger, and, after conversing with a city employee, started back to the city on the pavement around the circular park, struck the broken pavement, and was thrown from his motorcycle and severely

injured; that the purpose of the plaintiff and his companion was to ride over and use the roadway and parking space forming a part of the airport for the purpose for which they were created, maintained, and used, namely, to use said roadway and parking space as a public street and parking place; that the defendants were negligent in failing to keep the pavement of the roadway in a safe and suitable condition for persons operating vehicles over it, in failing to provide sufficient lighting to indicate the dangerous pavement, etc. Other parts of the petition which are immaterial to the questions in the case need not be stated.

The defendants demurred to the petition as setting out no cause of action, and because the acts of the General Assembly did not authorize the city to construct or maintain roadways outside of or adjacent to the flying field or park, and the plaintiff's presence and mission at the place where he was injured were not of such a nature as would give him a cause of action. The petition was amended, and the defendants demurred to it as setting forth no cause of action, as showing on its face that the roadway on which the plaintiff was injured is without the corporate limits of the city, and that the mayor and aldermen were without authority to acquire or maintain the roadway, and their acts in acquiring the land on which the roadway is located, or in maintaining the roadway, were ultra vires and void. The demurrers were overruled, and the defendant excepted.

■ It is contended for the defendants that the operation by the city of an airport, also known as a flying field or landing field, is a governmental function in the exercise of which the city is not liable for injuries caused by negligence of its agents or employees. The plaintiff insists, since the city receives certain revenues from the operation of the airport, that the city is liable in the same manner as any other operator of a legitimate business, and that the capacity in which the city acts is ministerial and not governmental. The municipal airport is of recent origin. Its legal status is not yet well defined, and is not easy to determine. But the statute authorizing the City of Savannah to construct or prepare a landing or flying field for airplanes (Ga. L. 1927, pp. 1526, 1531) and the uniform airport act (Ga. L. 1933, p. 102, Code, § 11-201 et seq.), furnish evidence of the legislative intention with regard to the question. In the Savannah charter amend-

ment the expression "landing or flying field or park" is used so many times as to indicate that the field is' to be considered as a park. This view is strengthened to some extent by the provision that the city is authorized to enter into an agreement with the park and tree commission for the use of any portion of any park under their control, and by the provision that the mayor and aldermen are authorized to use any park the city owns, for the purpose of a landing field. The allegations of the petition do not contradict but rather agree with the conclusion that the airport in question is to be considered as a park. In *Cornelisen* v. *Atlanta*, 146 *Ga.* 416 (91 S. E. 415), it was held: "But if the city, having charter authority, maintain the park primarily as a source of revenue, the duty of maintaining it in a safe condition for the use for which it is intended would be ministerial, and municipal liability would attach for breach of such duty. If in other respects the park be for public use as indicated above, it would not change its character if the city licensed a third person to maintain bath-houses, spring-boards, and the like, in one of the lakes in the park at which bathers might be entertained and bathing-suits supplied upon the basis of a charge therefor." In *Watson* v. *Atlanta*, 136 *Ga.* 370 (71 S. E. 664), the Supreme Court sustained a general demurrer to the petition which alleged that "in the maintenance of said Grady Hospital the City of Atlanta charged fees for patients entering therein," holding that this allegation could not be construed to mean that the city required of all of its patients payment for board and treatment at the hospital, and saying: "Had the distinct allegation been that the hospital was established and operated for private gain and profit by the city, quite another case would have been made from that presented in this petition. If the pleader had wished to charge that the City of Atlanta maintained and operated the Grady Hospital for private gain and profit, and that to this end it charged fees of all its patients, it would have been very easy to have made that distinct averment. For the Grady Hospital to charge fees from some of its patients is not at all inconsistent with its character as a public institution and one operated by the municipal corporation in the performance of its governmental duties." In *City of Columbus* v. *Webster*, 51 *Ga. App.* 270 (180 S. E. 512), it was alleged in the petition that the hospital was not operated as a charitable in-

stitution, "but operated for private gain or as a profit-making enterprise." This court held that the distinguishing mark was whether the institution was operated primarily as a profit-making enterprise.

There is no conflict between those decisions. The question is, in which class does the present case fall? The petition does not allege that the airport was maintained primarily for pecuniary profit to the city. It does allege that the airport was leased to a private corporation for "a valuable consideration," and that the city grants to an oil company, "for compensation to the city," "the privilege of selling gas, oil, and other commodities" to automobiles and airplanes, and the city receives "a stipulated sum" on all oil and gas sold, and that the city has the privilege of charging for the use of the parking spaces, roadways, and facilities. It is not alleged that the city has ever charged entrance fees or parking fees or other fees. The allegations that the city receives a "stipulated sum," and "a valuable consideration," are insufficient to show that the city operates the airport primarily as a source of revenue. Therefore, under the *Watson* and *Cornelison* cases, supra, the petition is insufficient to show liability against the defendants. In this connection it is proper to refer to the uniform airport act of March 23, 1933 (Code, §§ 11-201-11-209). Section 2 of the act (Code, § 11-202) is as follows: "Any lands acquired, owned, leased, controlled, or occupied by such counties, municipalities, or other political subdivisions for the purpose or purposes enumerated in section 11-201, shall and are hereby declared to be acquired, owned, leased, controlled, or occupied for public, governmental, and municipal purposes." It is clear that this legislation invested the airports of the State with the character of governmental institutions. In *Thrasher* v. *Atlanta*, 178 *Ga.* 514 (2), 518 (173 S. E. 817), the court said that aviation was recognized by the General Assembly as a lawful business to which it ascribed a public interest. But the question whether the operation of an airport is a governmental function under the act of 1933 was not involved in that case. In *Swoger* v. *Glynn County*, 179 *Ga.* 768 (2) 774 (177 S. E. 723), it was held that the maintenance of an airport is a public county purpose under the uniform airport act. If it should be held that the city was running a private business for profit, the plaintiff would have difficulty in justifying his presence

at the time and place where he was injured. He could hardly be considered an invitee. *Bynum* v. *Savannah, 33 Ga. App.* 502 (126 S. E. 857).

■ The location and character of the roadway is in dispute between the parties, the plaintiff contending that the roadway was within the airport, and the defendant that it was outside. This contention arises from the fact that after the original establishment of the airport the city bought forty acres of land which adjoined the tract already in use, and constructed thereon the roadway and other appurtenances. The city had legal authority to do this, from the act of August 20, 1929, authorizing the taking or condemning of land by the mayor and aldermen of Savannah for the purpose of extending a landing field. Ga. L. 1929, p. 1284, sec. 4. Consequently the roadway as described in the petition must be considered as within the airport. The petition does not allege this road to be a public street of the city, but calls it by its right name, a roadway. It was outside of the corporate limits, circular in form, and wholly within the city's property. The decision in *City of Atlanta* v. *Keiser, 50 Ga. App.* 600 (179 S. E. 192), is conclusive that such a roadway is not a street. The petition as amended did not set out a cause of action, and the court erred in not sustaining the general demurrers.

*Judgment reversed. Jenkins, P. J., and Sutton, J., concur.*