38038, 38060. SOUTHERN AIRWAYS COMPANY *v.* DeKALB COUNTY; and *vice versa.*

DECIDED APRIL 29, 1960—REHEARING DENIED MAY 19, 1960.

*Fisher, Phillips & Allen, Moise, Post & Gardner, R. Emerson Gardner, Albert G. Norman, Jr., J. William Gibson,* for plaintiff in error.

*George P. Dillard, W. Dan Greer, M. H. Blackshear, Jr., Spalding, Sibley, Troutman, Meadow & Smith,* contra.

NICHOLS, Judge. ▮ The original lease was entered into on October 25, 1940, and on July 1, 1943, was amended and on a date between December 16, 1943, and January 8, 1944, a new lease agreement, also dated October 25, 1940, was entered into between DeKalb County and Southern Airways Company. The plaintiff, Southern Airways Company, now relies on the last lease to support its contentions that it has a valid lease on the property, "Camp Gordon Airport," for 15 years beginning whenever the premises are vacated by the United States.

Paragraphs 2 and 26 of the lease provided: "2. To have and to hold the leased premises for a period of fifteen (15) years from the date of the completion of said Camp Gordon Airport for business, this said lease to be effective when said Airport has been completed and officially opened for business. . . 26. In the event that the entire premises known as Camp Gordon Airport shall be taken over by the United States Government

or by the State of Georgia for governmental functions so that lessee will be substantially deprived of its rights under this lease, said lease shall be suspended for the period in question, and shall be reinstated at the end of such period and an additional term added to the end of the lease period so that lessee shall be entitled to use of the premises under this lease for a time equivalent to the full lease period, as though there had been no suspension thereof."

Paragraph 9 of the petition as finally amended, alleged: "On approximately June 20, 1941, before completion of said airport and before petitioner took possession of said 'Camp Gordon Airport,' the entire premises were taken over by the United States Government for use in the national defense, a governmental function. Said taking over by the United States Government was by virtue of a lease agreement entered into on June 20, 1941, between DeKalb County and the United States Navy. By the terms of said agreement, defendant county leased said Camp Gordon Airport to the United States Navy for a term of one year beginning with the 1st day of July, 1941, and ending with the 30th day of June, 1942. The lease further gave the Navy 'the option of renewing said lease for additional periods of one year upon conditions hereinafter set forth for a period of not longer than eight years, unless at the end of such eight-year period it shall be determined by the President of the United States that a national defense emergency continues to exist, in which event the option to renew said lease for periods of one year shall be continued until such time as said national defense emergency has ceased to exist.' Paragraph A-1 of said agreement provided as follows: 'That the exclusive use, possession and control of said airport and all improvements and facilities now or hereafter situated thereon shall be delivered to the Government on the date fixed for the beginning of this lease and, for the term of this lease and any renewal thereof, the county will maintain the Government in exclusive use, possession and control of said airport."

In *Murphy* v. *Johnston*, 190 *Ga.* 23, 26 (8 S. E. 2d 23), the Supreme Court said: "When no life in being forms any part of the period of suspension or postponement of the time when the

estate or interest is to become vested, the limit of time under the rule against perpetuities is twenty-one years. 1 Perry on Trusts (7th ed.), 634, 635 (§ 380), and cit.; 48 C. J. 939, 941, and cit." See also 70 C. J. S. 578, 579, Perpetuities § 4. Therefore the question is presented as to whether, under its terms, the lease in question violated the rule against perpetuities.

Under the allegations of the petition the plaintiff never went into possession, nor was it ever entitled to possession, for the airport was not completed prior to the time the lease between the county and the United States was entered into. Under the pleaded terms of the lease with the United States, the United States had the right to renew its lease after the first eight-year period so long as the President of the United States has not declared that the national emergency has ceased to exist, and under such circumstances a period in excess of 21 years could expire before the plaintiff, under the terms of its lease, would be entitled to the property.

Moreover the plaintiff's lease was not to become effective until the airport was completed *and opened for business.* This too could be more than 21 years later, if ever, for there was no provision that the airport was to be completed within 21 years or any other period of time, and there was no provision that the airport would be opened for business within any certain period.

No Georgia case was cited by either party directly in point on this question and none have been found by the court, but the case of Haggerty *v.* City of Oakland, 161 Cal. App. 2d 407 (326 P. 2d 957, 66 A. L. R. 2d 718), involves a lease which provided that it could be effective when a building was completed but no definite time for completion was provided, and it was held that such a contract violated the rule against perpetuities, and it was there said: "If a lease for years is granted to take effect on a condition precedent which may not occur within the period of the rule, it violates the rule and must fall. (See Simes and Smith, The Law of Future Interests (2nd ed) p. 153, § 1242; Gray, The Rule Against Perpetuities (4th ed.) p. 353; 2 Tiffany, Real Property (3rd ed) p. 170, at p. 171, § 406.)"

A Georgia case somewhat similiar to the case sub judice was that of *Ge'arhart* v. *West Lumber Co.*, 212 *Ga.* 25 (90 S. E. 2d 10), involving a provision in a deed that property should be used for school purposes and if such provision was violated, without reference to time, the grantor would have the right to repurchase the land at a stated price. It was held: "The clause in the present deed, which authorized the grantor to purchase the land at a stated price, without fixing any time limit during which the property should be so used or within which the option should be exercised, was void as violative of the rule against perpetuities. Code § 85-707; 41 Am. Jur. 84, § 41; *Turner* v. *Peacock*, 153 *Ga.* 870 (113 S. E. 585); *Brown* v. *Mathis*, 201 *Ga.* 740 (2) (41 S. E. 2d 137)."

The lease in the present case which sought to grant the lessee an interest in the land to begin at a time in the future upon the happening of events which might or might not occur within 21 years was void as violating the rule against perpetuities and the judgment granting the defendant's motion for a summary judgment was not error.

■ Inasmuch as the judgment on the main bill of exceptions is affirmed the cross-bill of exceptions is dismissed.

*Judgment affirmed on main bill of exceptions. Cross-bill dismissed. Gardner, P. J., Carlisle and Frankum, JJ., concur. Townsend and Bell, JJ., concur specially. Felton, C. J., dissents.*

BELL, Judge, concurring specially. While I am in agreement with the reasoning and the decision reached in the majority opinion as delivered for the court by Judge Nichols, it is my thought that further clarification on one major point at issue is essential in order to render the opinion complete. This further clarification is required, I think, as to the question whether the so-called amendment of 1943 to the purported lease caused an interest to vest in Southern Airways as Chief Judge Felton in his dissent reasons that it did. This feature of the case is most important, for clearly, in the absence of vesting of interest at that point, the purported lease was based upon a contingency which might not occur within 21 years, and therefore it was utterly void.

Under the lease of the airport by the U. S. Government, the

Government had the option to renew the lease at its discretion as long as a national defense emergency continued to exist as determined by the President of the United States. It is obvious, then, that the original purported lease did not vest, and that the completion as required in the contract did not take place prior to the taking of the property by the U. S. Government. Therefore, under the original document, there could never have been a vested interest created, as its vesting was contingent upon an uncertain event, and that uncertain event could take place more than 21 years later. Therefore this purported lease would be void ab initio. The so-called amendment made in 1943 seems to have been an attempt to create a vested interest in the present, with the actual interest coming to the named lessee at a future date. At the time of this so-called amendment, the lessee could not take possession, no possessory interest at that time could be given by the named lessor, and the time at which the possession could be taken by the proposed lessee was left to be at some uncertain future time. This time could have been more than 21 years, and irrespective of what the parties intended to do, the future interest was a contingent one and therefore was void under the rule against perpetuities. This leaves the contract as amended subject to the same (the original) defect.

Further, agreeing that the contract of 1943 by its terms stated certain amendments or modifications to the original contract, what was the effect of these amendments? It merely amended a contract which under law was void ab initio since the original agreement violates this State's rule against perpetuities. A contract void because it lacks the necessary legal essentials, may be brought to life by adding it to another which furnishes the required legality. But a contract void as falling within the rule against perpetuities, continues and remains void when amendments are attempted which leave in the contract the objectionable contingent remainder. Obviously, under this situation there could have been no vesting of an interest at this particular time. The question here is answered, as it is usually in questions of this kind, by determining whether or not an interest is vested at a particular time. Since no vested interest became established the lease must be held to be void. Suffice it to add

that neither the payment nor the acceptance of money under an utterly void contract can have the effect of breathing legality into it.

I am authorized to say that Judge Townsend joins with me in concurring specially with the majority opinion.

FELTON, Chief Judge, dissenting. I dissent from the judgment based on the ruling that the lease violated the rule against perpetuities.

Paragraphs 2 and 3 of the lease dated October 25, 1940, are as follows: "2. To have and to hold the leased premises for a period of fifteen (15) years from the date of the completion of said Camp Gordon Airport for business, this said lease to be effective when said Airport has been completed and officially opened for business. 3. Lessee shall pay to lessor rent for the premises in the sum of five hundred fifty ($550) dollars per month, said rent to be paid semi-annually, in advance, lessee agrees to pay, at the time of the signing of this lease the sum of three thousand three hundred ($3,300) dollars, this being six months rent, in advance, provided, however, that in the event said Airport for any reason is not completed as contemplated, said money will be returned to lessee by lessor." Paragraphs 2 and 3 of an amendment to the original lease are as follows: "2. The rental to be paid as set forth in the aforementioned lease is hereby reduced by the sum of $1,000 per annum so that the rental to be paid by the lessee to the lessor hereafter shall be $5,600 per annum, to be paid semi-annually in advance; provided that said reduced rental is paid for a period commencing July 1, 1943, and such payments are made regularly and continually throughout the life of said lease. If said payments are not made irrespective of the possession of the premises, then the lessee shall be obligated to pay rental as set forth in the original lease. It is understood that the cancellation of the reduction in rent is the only penalty provided for the non-payment of same during such period as the lessee is not in full enjoyment of the premises. It is not intended to reduce the term of the lease and the same shall be extended by whatever time the exclusive possession of the premises is retained by the United States, it being the intention of the parties that the lessee shall have full enjoyment of the

696

leased premises for the full period of 15 years. 3. Paragraphs 2, 3 and 26 of the original lease are hereby amended insofar as said paragraphs may be in conflict with or modified by the foregoing provisions."

The original lease was unilateral because the county did not obligate itself to complete the airport. The amendment cured the defect. Furthermore, the petition alleged that the airport had been completed prior to the lease amendment of 1943, and paragraph 2 of the lease amendment provided that the rental payments should begin July 1, 1943, regardless of possession of the airport by Southern Airways, which provision vested the lessee's interest. Thus there was no contingency as to the completion of the airport or as to the vesting of sufficient interest of the lessee which cost it over $5,000 per year. It is indeed a novel doctrine, at least to me, that a defective or void contract cannot be perfected by amendment or new contract. The fact that the rental paid while the lessee was not in possession was later refunded is immaterial. If it was consideration by agreement there is a question whether the county could return it to the lessee.

Since the interest of the lessee vested at a time certain less than 21 years, the rule against perpetuities does not apply. Mitchell, Real Property in Georgia, 337-338; 70 C. J. S. 580, Perpetuities, § 4(d); 41 Am. Jur. 66-67, Perpetuities, § 22; Code § 85-902; 15 L. R. A. (N. S.) 1078; Wright v. Irving Trust Co., 70 F. 2d 245, 246; *Field* v. *Howell*, 6 *Ga.* 423, 431(3); *Grant* v. *Grant*, 187 *Ga.* 807, 816-17; Code § 85-701; Simes & Smith, "The Law of Future Interest," § 82; Gray; "The Rule Against Perpetuities," § 11; Simes & Smith, supra, § 1856; Gray, supra, § 970; 66 A. L. R. 2d 733.