## 20979. SOUTHERN AIRWAYS COMPANY v. DEKALB COUNTY.

ARGUED SEPTEMBER 13, 1960—DECIDED OCTOBER 11, 1960.

*Wm. G. Grant, Moise, Post & Gardner, Fisher, Phillips & Allen,* for plaintiff in error.

*George P. Dillard, Spalding, Sibley, Troutman, Meadow & Smith, M. H. Blackshear, Jr.,* contra.

ALMAND, Justice. Southern Airways Company, a corporation, in its petition for a declaratory judgment against DeKalb County in substance alleged: On October 25, 1940, the county leased to it a described tract of land comprising 325 acres, known as Camp Gordon Airport, for a period of 15 years—the lease to begin on the date of the completion of the airport—at a monthly rental of $550; that, on October 25, 1940, the plaintiff paid to the defendant $3,000 as advance rental. It was provided that, if the entire premises of the airport should be taken over by the United States Government for governmental functions, so that the lessee would be deprived of its rights, the beginning period of the lease would be terminated for the period in which the Federal Government would be in possession of the premises. On June 20, 1941, the United States Government took possession of the entire airport facilities before the facilities had been completed. Since that date the possession and use of the premises has been in the United States Government.

In the latter part of 1943, the parties entered into a new agreement covering the same airport property as contained in the 1940 contract. (The terms of this new agreement will be set out more fully hereinafter.) This lease by its express terms

canceled and declared the 1940 lease contract to be null and void, and provided that the 1943 lease constituted the full and complete "understanding and agreement respecting the leasing of the premises herein described in as full and complete a manner as if the other instrument had never been executed." It was alleged that, between October 25, 1940, and December 28, 1954, the plaintiff paid the defendant $11,700 as rental for the leased premises; that, in December, 1954, the defendant refunded to the plaintiff all of this amount except $1,000, which was left with the defendant as evidence of the plaintiff's good faith and as an initial deposit on any rentals that might accrue. It was alleged that, in April, 1954, the Federal Government announced its intention to surrender possession of the Camp Gordon Airport; and that the defendant had stated its intention to take possession of these premises to the exclusion of the plaintiff and deny to it its rights under the 1943 lease contract, the county contending that this lease contract was void.

The prayers of the petition were for a declaratory judgment declaring that the plaintiff had the right to the possession of the premises under the 1943 lease contract; and that the defendants be restrained from interfering with its rights under the contract.

The defendant's motion for a summary judgment was granted, and a judgment was entered declaring the 1943 lease contract to be null and void. This judgment was affirmed by the Court of Appeals (101 Ga. App. 689, 115 S. E. 2d 207). We granted the plaintiff's application for the writ of certiorari.

The Court of Appeals ruled that, under the allegations in the petition, the plaintiff had never gone into possession of the leased premises, and since its right to enter into possession was dependent upon the surrender of the airport premises by the Federal Government, which could extend to a period in excess of 21 years, the lease contract was void as being in violation of the rule against perpetuities. This ruling was predicated upon the court's ruling that the lease "sought to grant the lessee an interest in the land to begin at a time in the future upon the happening of events which might or might not occur within 21 years."

The primary question, and in our opinion the decisive one,

is: Did the contract lease of 1943 constitute a lease for years, in which the relation of landlord and tenant was established, or did it convey an estate for years, that is, convey an interest in the land? If the contract only gave a usufruct in the premises, the rule against perpetuities would not apply. If it conveyed an estate for years (assuming that the county could legally convey an interest in property owned by it and used for governmental purposes), the rule would be applicable.

While the rule as between private parties is that a lease for a term exceeding five years prima facie conveys an estate for years, if, upon examination of the lease agreement, it appears that the parties, either by express terms or by necessary implication, intended that the lessee should enjoy only the right to the possession and use of the leased premises, and it was not the purpose of the agreement to convey to the lessee any interest in the leased premises, the lease will be construed as creating the relationship of landlord and tenant and not as creating an estate for years. *Warehouses, Inc. v. Wetherbee,* 203 Ga. 483 (3, 4, 5) (46 S. E. 2d 894), and cases therein cited.

We must, in considering the provisions of the contract or lease agreement of 1943, do so in the light of the statutory provisions and decisions of this court. *Code* § 85-803 provides: "An estate for years carries with it the right to use in as absolute a manner as a greater estate, but not to the injury of the property or of the person entitled either in remainder or reversion; the acts of omission and commission prescribed as grounds of forfeiture of an estate for life shall operate to the same effect as against a tenant for years." *Code* § 61-101 declares: "When the owner of real estate grants to another simply the right to possess and enjoy the use of such real estate, either for a fixed time or at the will of the grantor, and the tenant accepts the grant, the relation of landlord and tenant exists between them. In such case no estate passes out of the landlord, and the tenant has only a usufruct, which he may not convey except by the landlord's consent and which is not subject to levy and sale; and all renting or leasing of such real estate for a period of time less than five years shall be held to convey only the right to possess and enjoy such real estate, and to pass no estate out of

the landlord, and to give only the usufruct, unless the contrary shall be agreed upon by parties to the contract and so stated therein."

The only authority for the defendant county to acquire or lease the premises in question is found in Chapter 11-2 of the Code, which authorizes a county to acquire, establish, construct and maintain airports and thereafter to lease to private parties for operation, space, area, improvements, and equipment on such airports; and where such airports are maintained by the county or leased to others, such use is declared to be for public or governmental purposes. We also recognize the general rule that property owned by the county and leased for public and governmental purposes cannot be alienated except by express legislative authority. *Kirkland v. Johnson*, 209 Ga. 824(1) (76 S. E. 2d 396).

We will now examine and construe the contract lease of 1943. It recites that the county, acting under the authority of the Revenue Act of 1937 (Ga. L. 1937, p. 761), has leased to Southern Airways, a tract of land comprising 325 acres known as the Camp Gordon Airport, consisting of the land, 2 hangars, an administration building, erected or to be erected, and including landing-field lights, wiring, water, sewerage disposal and all other improvements, for a period of 15 years from the date of the completion of the airport and the opening for business, at a rental of $550 per month.

Paragraphs 4 and 5 of the lease provide: "4. Lessee shall use and operate the premises as a Municipal Airport, under the name of Camp Gordon Airport, and shall offer such services and provide such facilities at the premises, as shall be adequate and appropriate to serve the needs of the public, giving due regard to the size and location of the premises. Lessee shall operate and develop the premises as a Municipal Airport to the end that it will be of the greatest service, use and convenience to the public. Factors of safety shall be of prime importance with respect to the use, operation and maintenance of the premises. 5. The services and facilities to be provided or furnished by Lessee at the premises at all times during the term of this lease or extension thereof, in order to perform the obli-

gations of the Lessee hereinbefore assumed, shall include the following: (a) An experienced and competent commercial pilot in the employ of Lessee shall be assigned to the position of Airport Manager on the premises. Said manager shall be assigned by the Lessee to devote his full time to the management of the premises as a Municipal Airport under this lease. (b) Adequate shop facilities, materials, equipment and supplies shall be installed and maintained at the premises for the maintenance and repair of aircraft. Lessee shall make available at the Airport the services of duly qualified and competent airplane mechanics. (c) Lessee shall maintain a bulletin board upon which will be posted notices and information for airmen and pilots, including weather reports. Adequate telephone service shall be furnished by Lessee, with right of the County police force to use Lessee's private telephone. Lessee shall arrange for a toll station for public use. (d) Storage space in hangars shall be made available to the public for the storing of airplanes in reasonable number, having due regard to the size of the hangars, and the requirements of Lessee itself for the storage of its own airplanes and equipment. (e) Lessee shall offer training in aviation to the public and shall employ in its training program only experienced and competent instructors and adequate equipment meeting all legal requirements. (f) Lessee shall station at said Airport an adequate number of airplanes to meet the reasonable demands of the public for the use of airplanes from the premises. (g) Lessor shall promulgate all rules and regulations for the purpose of facilitating and directing air traffic and the business of the Airport to the end that the premises will be safely, efficiently and adequately maintained and operated and the Lessee's Airport Manager shall be charged with the duty of enforcing such rules and regulations and the rules and regulations of the Civil Aeronautics Authority. (h) Lessee shall maintain the premises and the grounds around the buildings in a sanitary and attractive manner, shall keep washrooms and toilets for men and women, white and colored, clean and equipped, and shall keep the lobby of the Administration Building, and other places open to the public, sufficiently heated in cold weather."

The lessee was required to perform ordinary maintenance and repairs, but was not held responsible for making major repairs or maintaining the landing strip, field lights, or hangars. All extraordinary maintenance and repair was to be performed by the lessor, with the right of the lessor to enter the premises for the purpose of inspection and making any repairs or improvements it desired. The operation of the airport was subject to all applicable rules of the Civil Aeronautics Authority. The lessee was required to carry public liability insurance covering injuries to persons and property. Upon the failure of the lessee to perform its obligations under the agreement, the lessor had the right to terminate the lease. The lessee's records of receipts and expenses in the operation of the airport were subject to inspection by the lessor. All charges made to the public for use of the airport facilities must be in accordance with a schedule of charges to be established by the lessor. The lease was not assignable without the written consent of the lessor. The lessee was to have the exclusive commercial operation of the entire airport, and the lessee was given the exclusive right to the use of the first two hangars erected at the airport with the option to rent additional hangars or buildings erected in the future.

Paragraph 19 provides: "Nothing contained in the provisions of paragraphs 16, 17 and 18, or in any other portion of this lease, shall be construed to grant to the Lessee or to any other persons the exclusive right to the use of any landing area or air navigation facility at the Camp Gordon Airport. Said landing areas and air navigation facility shall be open to the general public, including airline transportation companies, without discrimination, in accordance with the rules and regulations of the Civil Aeronautics Authority, applicable to Municipal Airports."

The lessor was obligated to provide for the location of a restaurant or lunch room and soda fountain to be located in the administration building.

Paragraph 21 of the lease provides: "Lessee, through its Airport Manager, shall have the exclusive right to managing and operating said Airport, subject to the rights of the Lessor to execute leases with the United States Army or United States Navy pertaining to governmental flying provided, however, that such

management and operation shall be in accordance with the rules and regulations, including traffic rules, which shall be promulgated by the Lessor and the Lessee shall make recommendations to the Lessor with reference to such rules and regulations to the end that said Airport may be operated safely, efficiently and to the further end that all take-offs, landings, taxiing and flying the immediate vicinity of the field shall be uniform for maximum safety."

During the term of the lease, the lessor was required to furnish to the lessee, without charge, water and sewerage facilities. The expense of lighting for boundary lights, field lights and obstruction lights was to be borne by the lessor. The lessee with the consent of the lessor had the right to sublease space in the administration building. In the event the entire premises were taken over by either the United States Government or the State of Georgia, the lease was to be suspended during the term occupied by either agency. The lessee was granted the right to contract with other airline companies for use of the facilities of the airport, subject to approval of the lessor. The lessor reserved the right to construct hangars or other buildings and to rent them to others, subject to the option given to the lessee to rent them, with the provision that "the landing area and air navigation facilities of said airport shall always be open and available to all airline transportation companies without discrimination."

Paragraphs 30, 31, 32, 33, 34, and 35 provide in part as follows.

"30. Lessor reserves the right to further develop or improve any landing area within the leased premises as it sees fit, regardless of the desires or views of the Lessee and without interference or hindrance.

"31. Lessor shall have the right to maintain and keep in repair the landing area and all publicly owned facilities of the airport, existing and future, together with the right to direct and control all activities of Lessee in this regard.

"32. Lessor shall have the right to take any action it considers necessary to protect the aereal approaches of the airport against obstruction, together with the power to prevent the Lessee from erecting, or permitting the erection of, any building or other structure on the airport which, in the opinion of the

Lessor, would limit the usefulness of the airport or constitute a hazard to aircraft.

"33. Lessor shall at all times have the right to require lessee to operate the airport and all facilities and services thereon for the general use and benefit of the public and to require Lessee to make available all airport facilities and services to the public, without unjust discrimination and to prevent the Lessee from granting or exercising an exclusive right in violation of Section 305 of the Civil Aeronautics Act, and to prevent the Lessee from imposing or levying excessive, discriminatory, or otherwise unreasonable charges or fees for any use of the airport or its facilities, or any airport service.

"34. In the operation of said Airport, Lessee shall conform to all rules and regulations of the Civil Aeronautics Authority which may be applicable to the operation of Municipal Airports.

"35. In the operation of said Airport, Lessee shall make all facilities at the Airport available to all members of the public, including airline transportation companies, without discrimination. . . ."

In our opinion a mere consideration of the terms of the lease, as outlined above, discloses that the intent of the parties was that Southern Airways simply contracted with the county to manage and operate the county's airport, as its agent, for public and governmental purposes, as outlined under *Code* § 11-202. Whether the contract between the parties be called a lease, a license, a franchise, or a contract of agency or management, it was the intention of the parties that Southern Airways would not obtain any interest in the real estate described in the contract, but only a circumscribed and limited use of the airport facilities. The reserved rights of the lessor as to the control, improvement, inspection, and supervision of the premises, with the right of others to use the facilities, negate any contention that the lessee would have the exclusive possession and control of the premises.

At the time the 1943 contract was executed, the airport had been completed and the county had received advance rentals from Southern Airways. The fact that the beginning of the term of the lease was postponed until the time the United

States Government ceased to use the airport would not render the agreement invalid. A valid lease, the term of which is to begin in the future, may be made. *Field v. Howell,* 6 Ga. 423 (3).

Whether or not a county can convey to a private person or private corporation an estate for years in property acquired, held, and used by it for governmental purposes without express legislative consent, is not in view of the above ruling before us for decision. The narrow question before us is: Did the Court of Appeals err in sustaining the judgment of the trial court, on motion for summary judgment, that the contract was void? Being of the opinion that the contract was not void for the reasons assigned by the Court of Appeals, it follows that its judgment must be and is

*Reversed. All the Justices concur.*