38038, 38060.  SOUTHERN AIRWAYS COMPANY
v. DeKALB COUNTY; and *vice versa.*

Decided December 1, 1960—Rehearing denied
December 16, 1960.

*Fisher, Phillips & Allen, Moise, Post & Gardner, R. Emerson Gardner, Albert G. Norman, Jr., J. William Gibson,* for plaintiff in error.

*George P. Dillard, W. Dan Greer, M. H. Blackshear, Jr.,
Spalding, Sibley, Troutman, Meadow & Smith,* contra.

BELL, Judge. The principal issue raised by this appeal is
whether the alleged lease entered into between the parties is
valid or void. It may be noted that in one of the two previous
appearances of this case before the Supreme Court, the contract
was held to be in proper form and prima facie valid. *Southern
Airways Co. v. Williams,* 213 Ga. 38 (96 S. E. 2d 889). The
second appearance of the case before the Supreme Court was
occasioned by the granting of a writ of certiorari on the applica-
tion of Southern Airways Co. to review the majority opinion and
judgment of this court in *Southern Airways Co. v. DeKalb
County,* 101 Ga. App. 689 (115 S. E. 2d 207), which held in ef-
fect that the lease agreement, to become effective upon the
happening of an event in the future which might or might not
occur within 21 years, no life in being there being involved, vio-
lated the rule against perpetuities and was void. In its consid-
eration of the case the Supreme Court held that the lease
agreement gave only a usufruct in the premises, not an interest
in realty, and consequently, the rule against perpetuities would
not apply. *Southern Airways Co. v. DeKalb County,* 216 Ga.
358 (116 S. E. 2d 602). Thus, the view of this court on the
point became quite immaterial, and the judgment of this court is
vacated. With the settling of this point by the Supreme Court,
the case, following customary procedure, was returned to us for
consideration and determination of the several issues remaining
in contention.

■ The first contention of the county to the effect that this
lease constituted an invalid effort by the county commissioner
then in office to bind himself and his successors in such a way as
to prevent free legislation in matters of county government, we
think, is not tenable. There is express statutory authority for
municipalities, counties, and other political subdivisions to ac-
quire, own, lease, control, occupy, equip, maintain, regulate, etc.,
airports and landing fields under the provisions of the Uniform
Airports Law (Ga. L. 1933, p. 102, et seq.), which is now codi-
fied as Chapter 11-2 of the Code. Admittedly, *Code* § 11-202
provides that any lands thus acquired for these purposes

". . . shall and are hereby declared to be acquired, owned, leased, controlled, or occupied for public, governmental, and municipal purposes." There is a cleavage of opinion among the states as to whether the quoted language in the Uniform Act makes the owning, controlling, and operating of airports a governmental function of the political subdivision involved, or whether it is a proprietary or non-governmental function so that the political subdivision does not have governmental immunity in matters arising under its authority. See the discussion of the problem in 66 A. L. R. 2d 634, et seq., and also 16 A. L. R. 2d 1069, and 101 A. L. R. 1151. In the absence of express statute, it appears that the general rule in the United States is that political subdivisions operating airports are engaged in a business or proprietary function and not performing an act of government and, therefore, there is no governmental immunity. 66 A. L. R. 2d 636. This court has held that a municipality operating an airport under this statute is engaged in a proprietary function and is liable for the tortious acts of its servants and agents in the operation of an airport from which substantial revenue is derived. Thus: "Section 2 of the Uniform Airports Act (Ga. L. 1933, p. 102; *Code* § 11-202), which provides that lands acquired, controlled, or occupied as landing fields for the use of aircraft shall be so acquired or controlled for public, governmental, and municipal purposes, was intended to be a declaration on the part of the legislature of the public purpose as to which the authorization was given, and not as a limitation immunizing such municipalities from suit regardless of circumstances." *Caroway v. City of Atlanta*, 85 Ga. App. 792 (1c) (70 S. E. 2d 126). This is the majority view as adduced by the courts throughout the United States, and it certainly appears logical that where the Government engages in the operation of a business or business enterprise, it should, as a general rule, forfeit its traditional immunity from liability, and be held to do business on business terms. As this is true in the field of tort liability, it should be true with the greater force in the field of contract law. While *Code* § 69-202 provides that one council may not bind itself or its successors so as to prevent free legislation "in the matter of municipal government," it appears clear

that this section does not apply to a situation where a political subdivision is operating in a proprietary rather than a governmental capacity. *Lawson v. City of Moultrie,* 194 Ga. 699, 702 (22 S. E. 2d 592). See also *Black v. County of Forsyth,* 193 Ga. 571 (19 S. E. 2d 297). We thus hold that where, as here, a county through its proper authority leases property which it owns for use as an airport, it is engaging in a proprietary and not a governmental function. It follows that the county commissioner, the proper authority here, had the power to bind his successors in office by entering into this agreement. This conclusion, it appears to us, is supported further by the provisions of *Code* § 11-205, which in part provide that "Counties, municipalities, or other political subdivisions which have established . . . airports or landing fields . . . are hereby authorized: . . . (c) To lease such airports or landing fields to private parties for operation or to lease or assign to private parties for operation, space, area, improvements, and equipment on such airports or landing fields . . ."

■ The second contention of the county is that the lease represented an effort to grant exclusive rights to the use of landing areas and air navigational facilities on which Federal funds had been expended in direct violation of the act of Congress forbidding the grant of any exclusive rights. While certain portions of the lease as presented by the record do use terms granting the lessee "the exclusive commercial operation of the entire airport . . . the exclusive right to the use of the first two hangars . . .", other parts of the lease expressly provide that the lessor shall at all times have the right to require the lessee to operate the airport and all its facilities and services for the general use and benefit of the public, and to require the lessee to make available all airport facilities without unjust discrimination. Furthermore, other sections of the agreement require the lessee to make all facilities at the airport available to all members of the public, including airline transportation facilities, and expressly negate any grant to the lessee or to any other persons of the exclusive right to the use of any landing area or air navigation facility at the Camp Gordon Airport, while specifically requiring that the landing areas and air navigation facility shall

be open to the general public, including airline transportation companies, without discrimination, in accordance with the rules and regulations of the Civil Aeronautics Authority, applicable to municipal airports. Still other portions of the agreement expressly provide that the landing areas and air navigation facilities of the airport shall always be open and available to all airline transportation companies without discrimination.

Accordingly, we conclude that this objection to the validity of the contract is not meritorious.

■ The third contention of DeKalb County is that the contract is void because, prior to the time it was made, the county, by a resolution which constituted a contract with the holders of revenue anticipation certificates, covenanted and agreed that the gross revenues from the operation of the airport would be applied to the payment of these bonds, and that no lien or other contract superior to the bondholders' rights would be made with respect to these gross revenues. The record discloses that the validation order issued by the Superior Court of DeKalb County expressly gave the county the right to prescribe, and from time to time to revise, fees and collect charges of the users of the airport, and to that end, might lease all or a portion of the airport and its facilities and collect rent sufficient to pay the cost of operating and maintaining the airport, and to pay the principal and interest of the certificates at their respective maturity dates. The validation proceeding under the second issue of revenue anticipation certificates allegedly was substantially the same. In view of the fact that the validation proceedings expressly provided for the county's leasing the airport in its discretion, and in view of the provisions of *Code* § 11-205, which is the statutory authorization for the county's leasing the airport, and, since there is no showing that the present lease in any way departed from the validation proceedings, we conclude that this objection of the defendant to the validity of the lease is not well taken. See *Dawson v. Hospital Authority of City of Augusta*, 212 Ga. 146 (91 S. E. 2d 12), and *Code* § 87-819.

It would appear, if this lease in any manner violated the rights of the certificate holders that they, and not the county, would be the proper parties to raise the issue in an appropriate proceeding.

■ The next undetermined contention of the county is that Southern Airways Co. is not entitled to judicial enforcement of this agreement because the petition shows that it has not paid the consideration as required under the terms of the contract and that all but $1,000 of the amounts which it had paid have been returned to it and accepted by it. The terms under which the refund of rentals paid under the lease were made are set out in the record as follows:

"At a regular called meeting of the Commissioner of Roads and Revenues of DeKalb County, Georgia, held on the 28th day of December 1954, the following action was taken:

"Whereas, on the 25th day of October 1940 a lease was executed between DeKalb County and Southern Airways Company which provided for a lease of the Camp Gordon Airport, and

"Whereas, the lessee thereunder never obtained possession of the premises because of the fact that the United States required the facilities of said airport for a naval reserve aviation base and has continuously held and occupied said premises as a naval reserve aviation base up to the present time, and

"Whereas, the lessee has deposited with the county the sum of eleven thousand seven hundred ($11,700) dollars as advance rentals, for which no benefit whatever has accrued to the lessee, and

"Whereas, the lessee desires to retain all rights granted by said lease and any modification thereof in the event the property is surrendered by the United States, and is willing to leave on deposit the sum of one thousand ($1,000) dollars as evidence of its good faith and as an initial deposit on any rentals which may accrue,

"Be it resolved that DeKalb County refund and return to said lessee all monies paid by it in rentals except the sum of $1,000.

"Be it further resolved that a copy of this resolution be forwarded to Southern Airways Company and that the terms of any leases heretofore entered be modified in accordance with the terms thereof.

"There being no further business, the meeting adjourned."

It thus appears from this official action of the then commis-

sioner of roads and revenues that the refund was made for the reason that the lessee had never been able to occupy the premises up to that time, because of the preemption of the leased premises by the United States Government. In usual business procedure there appears to be no legal reason why a party may not voluntarily surrender some of the rentals due under a contract. This was the apparent intent of the county in taking this action. From the language used, it appears that it was clearly the intent of the parties to continue the lease in full and modify the terms only to the extent of surrendering a portion of the rent. It would require a considerable stretch of the imagination to interpret this mutual accord as constituting a rescission of the contract.

■ The next contention of the county is that the lease is void because of vagueness both as to the property to be covered and as to the duties to be performed by Southern Airways. As we read the lease, there are admittedly some provisions which are not crystal-clear. It also contains language as to the meaning of which the parties might conceivably disagree. To illustrate, article 4 of the agreement provides that the lessee shall offer services and provide such facilities at the airport as will be adequate and appropriate to serve the needs of the public, giving due regard to the size and location of the premises, and that the premises shall be operated and developed by the lessee as a municipal airport to the end that it would be of greatest service, use, and convenience to the public, and that factors of safety shall be of prime importance with respect to the use, operation, and maintenance of the premises. While other clauses in the contract might similarly be considered, nevertheless, reading the agreement as a whole, it is not so indefinite as to be incapable of enforcement, and viewing the time in which it was drawn, it is likely that the contract was drafted as clearly as conditions then existing permitted it to be drawn.

The rules for construction of contracts as expressed in the Code permit this contract to be so interpreted as to give effect to its main purpose. Thus, "The cardinal rule of construction is to ascertain the intention of the parties. If that intention be clear, and it contravenes no rule of law, and sufficient words be

used to arrive at the intention, it shall be enforced, irrespective of all technical or arbitrary rules of construction." *Code* § 20-702. See also, *Hanson v. Stern,* 102 Ga. App. 341 (116 S. E. 2d 237). Parol evidence, together with all the attendant and surrounding circumstances, may be proved to explain an ambiguity, latent or patent, in a contract. Ambiguity is defined as "duplicity, indistinctness, an uncertainty of meaning or expression." *Tarbutton v. Duggan,* 45 Ga. App. 31 (5) (163 S. E. 298). Furthermore, an offer is not too indefinite if it can be made certain by reference to outside matters. 1 Williston on Contracts, 3d ed., § 47. And even though subsidiary promises in a contract may be indefinite, this will not cause the entire contract to be unenforceable if the main promise is sufficiently clear to be capable of enforcement. Ibid, § 48. There is admittedly a difference between ambiguity and indefiniteness; thus "There is a difference between ambiguity, which imports doubleness and uncertainty of meaning, and that degree of indefiniteness which imports no meaning at all. The former can be explained by parol. The latter cannot be merely explained, but a deficiency must be supplied." *Jones v. Ely,* 95 Ga. App. 4, 7 (96 S. E. 2d 536). "Nor is a contract ambiguous within that sense merely because it may be even difficult to construe." *McCann v. Glynn Lumber Co.,* 199 Ga. 669, 679 (34 S. E. 2d 839). And, "the first and fundamental rule is to ascertain the intention of the parties, and to this end the whole instrument, together with its circumstances, must be considered." *A. C. Alexander Lumber Co. v. Bagley,* 184 Ga. 352, 362 (191 S. E. 446). It is an elementary principle of interpretation of contracts that where the main purpose of the contract can be enforced, it will be given effect. Here the main purpose clearly appears to have been the giving of a usufruct of the airport by the defendant to the plaintiff, and while there may be some ambiguity as to collateral undertakings, even if these should be found to be indefinite rather than ambiguous and thus unenforceable, they will not affect the enforceability of the contract, but only that of the collateral agreements.

■ Another contention asserting invalidity is that the agreement is void as a disposition of county property because there

was no antecedent resolution of the county authorities directing a disposition of county property and authorizing its conveyance. By its decision reversing this court (216 Ga. 358, 116 S. E. 2d 602, supra), the Supreme Court has answered this contention by holding that this agreement does not create an estate for years but merely a relationship of landlord and tenant or principal and agent, or grants a lease or a license or a franchise, and that the Southern Airways Co. does not obtain by this contract any interest in the real estate. Thus, there is no conveyance of the county property, and this ground of claimed invalidity is without merit.

■ In the brief the defendant strenuously attacks item 23 of the lease, which provides in substance that during the period of the lease or any renewal thereof the lessor shall furnish to the lessee such water as may be necessary for use by the airport and such sewerage facilities as may be upon the premises, the water and sewerage facilities to be furnished to the lessee *without charge*. The county contends that this portion of the consideration is invalid, citing *Horkan v. City of Moultire,* 136 Ga. 561 (71 S. E. 785), which held that the council of a municipality cannot make a binding contract by which it undertakes to obligate the municipality to furnish sufficient water free of charge for an indefinite time in the future. In reaching this conclusion, the Supreme Court cited what is now *Code* § 69-202, which provides that one council may not, by ordinance, bind itself or its successors so as to prevent free legislation in matters of municipal government. The Supreme Court went on to say, "If this could not be done by an ordinance, of course it could not be done by a contract. Power in a municipality of making and changing, by ordinance, water rates from time to time, whenever necessary to protect the city in its revenues and to enable it to furnish to all on equal terms and at reasonable rates, is a legislative or governmental power, and therefore can not be legally bargained or bartered away by one council so as to forever deprive succeeding councils of the right to exercise it." We agree with the defendant in this contention, and hold that article 23 of the lease violates *Code* § 69-202. See also *City of Warm Springs v. Bulloch,* 212 Ga.

149 (91 S. E. 2d 13). If a municipality cannot legally bind itself to furnish water free for such a long period, neither can a county. The same reasoning and legal principles apply with equal effectiveness to the provision for free sewerage facilities. However, the fact that these portions of the consideration which flow from the lessor to the lessee are void does not invalidate the lease for the elemental reason that the consideration in this extensive agreement is severable. *Code* § 20-305 provides, "If the consideration be good in part and void in part, the promise will be sustained or not, according as it is entire or severable, as hereinafter prescribed. If the consideration be illegal in whole or in part, the whole promise fails." See also *Code* § 20-112. Thus, "an obligation supported by an independent consideration will be enforced, though indirectly connected with an illegal transaction . . ." *Mechanics Realty &c. Co. v. Leva*, 16 Ga. App. 7, 8 (2) (84 S. E. 222). Furthermore, "The rule is that where an agreement consists of a single promise, based on a single consideration, if either is illegal, the whole contract is void. But where the agreement is founded on a legal consideration containing a promise to do several things or to refrain from doing several things, and some only of the promises are illegal, the promises which are not illegal will be held to be valid." *Roberts v. H. C. Whitmer Co.*, 46 Ga. App. 839 (169 S. E. 385). And see *Scott v. Hall*, 56 Ga. App. 467, 475 (192 S. E. 920). We hold this contract to be severable within the above rules, and the invalidity of the clauses of the lease providing free water and free sewerage are not fatal to the remaining valid portions.

■ We now turn our attention to the county's general demurrer attacking Southern Airways' petition on the ground that neither as a whole, nor in any of its several parts, does it set out a cause of action or any facts on the basis of which it is in law entitled to the grant of equitable or declaratory relief. This demurrer was overruled by the trial court, and the defendant's cross-bill of exceptions was taken to this ruling. The contention of the county in its cross-bill is that Southern Airways' action is substantially equivalent to a suit for specific performance and the pleadings do not show that the plaintiff is

entitled to this relief. The prayers of the petition are: (c) That the court enter a judgment in said matter declaring the rights of the petitioner to be that the said 1943 lease, entered into between petitioner and defendant between December 16, 1943, and January 8, 1944, is a valid agreement, binding on both parties; that on surrender of the premises described therein by the Department of the Navy, petitioner is entitled to possession and use of said premises, under the terms of the said 1943 lease, for a period of fifteen (15) years. (d) That the defendant be restrained and enjoined from: 1. Accepting surrender of said premises from the Department of the Navy in such manner or under such circumstances that your petitioner's *estate* in said premises will then and there commence running. 2. Entering into any contract or agreement relating to use or possession of said premises, with any other party. 3. Making any physical changes on said premises or buildings or appurtenances thereon. 4. Doing any act affecting your petitioner's right to full enjoyment of said premises under the provision of said contract, until further order of the court, and that the defendant be required to show cause on a day certain why said restraining order and injunction should not be continued. The defendant, in support of the contention that this is substantially equivalent to a suit for specific performance, cites *Harris v. Abney,* 208 Ga. 518 (67 S. E. 2d 724), which was an equitable petition brought by the plaintiff against the defendant seeking to enforce a claimed right of renewal of a lease to the plaintiff of land owned by the defendant to be used as an airfield. The present case is not primarily an equitable action, but is one seeking a declaratory judgment praying incidentally for the correlative injunctive relief of an interlocutory nature, and thus is distinguishable from the *Harris* case.

*Judgment on the cross-bill of exceptions is affirmed. Judgment on the main bill of exceptions is reversed. Felton, C. J., Townsend, P. J., Carlisle, Frankum and Jordan, JJ., concur. Nichols, J., dissents.*

NICHOLS, Judge, dissenting. ■ I dissent from the decision of the majority in the first and seventh divisions of the opinion, as well as from the judgment of reversal on the main bill of exceptions.

The first division of the majority opinion holds that the airport was constructed and operated not as a governmental function but as a proprietary undertaking. In the brief of counsel for the county the contention is made that the lease was void because it had the effect, if valid, of restricting the free exercise of legislative and governmental functions by future governing bodies of DeKalb County. The lease, as amended, was made for a period of 15 years from an uncertain date in the future. *Code* § 69-202, dealing with municipalities, forbids ordinances that bind future governing bodies. In the case of *Horkan v. City of Moultrie,* 136 Ga. 561 (71 S. E. 785), the Supreme Court, in dealing with a contract which would have bound a future council, said: "If this could not be done by an ordinance, of course it could not be done by a contract." In the case of *Aven v. Steiner Cancer Hospital, Inc.,* 189 Ga. 126, 140 (5 S. E. 2d 356), the Supreme Court held: "This rule is not of statutory origin, and is not peculiar to Georgia. It is a codification of a principle stated in *Williams v. West Point,* 68 Ga. 816, which is applicable generally to legislative or governmental bodies." In the case of *Smith v. Ouzts,* 214 Ga. 144 (103 S. E. 2d 567), this same rule was applied to a county board of education, and while most cases dealing with the subject of *governmental functions* are tort cases involving municipalities, since no action can be brought against a county without express legislative authority (*Code* § 23-1502), there is no doubt that such rule of law is just as applicable to counties as it is to cities, or other legislative or governing bodies. Accordingly, since a contract that extends beyond the term of office of a governing body can be made as to proprietary or ministerial functions (see *Lawson v. City of Moultrie,* 194 Ga. 699, 22 S. E. 2d 592), if the lease was made in a proprietary undertaking by the county it was not void as restricting the free exercise of legislative functions by future governing bodies of DeKalb County, while on the other hand if the lease was made, and the airport established not as a profit-making enterprise, but, as a governmental function, then the lease was void.

The decision of this court in *Caroway v. City of Atlanta,* 85 Ga. App. 792, 796 (70 S. E. 2d 126), held that where "a city

maintains an airport passenger terminal under *Code* § 11-201 and for a substantial profit, as a private ministerial and proprietary undertaking, and in competition with private business leases its facilities out while at the same time retaining the responsibility for maintenance of a portion of these facilities, it too, in order to escape liability, must keep the premises in its charge in a safe condition for the passengers of its lessees." In *Mayor &c. of Savannah v. Lyons*, 54 Ga. App. 661 (189 S. E. 63), it was held that, in the absence of allegations that the airport was operated as a profit making enterprise, such operation, even when the airport was leased, was a governmental function. Under the allegations of the plaintiff's petition in the present case the airport was not constructed or operated for profit. Indeed, the undisputed allegations show that the airport was *not* constructed for profit-making purposes. The plaintiff alleged, as a part of its petition, certain allegations of the resolution and pleadings dealing with the issuance and validation of the bonds issued in connection with the construction of the airport by the county. These allegations show that the airport was constructed from funds obtained from revenue anticipation certificates, that the income from the airport could be used solely for the purpose of paying the bondholders and for necessary upkeep, etc., of the airport, and such income could not be diverted to any other purpose. Certainly under such circumstances it could not be said that the airport was constructed or leased in the proprietary capacity of the county. The terms of the lease are alleged and it does not disclose that there was any intention between the parties that such lease was made by the county in its proprietary capacity. The Supreme Court, in considering the terms of the lease when the case was before that court on the writ of certiorari, said: "In our opinion a mere consideration of the terms of the lease, as outlined above, discloses that the intent of the parties was that Southern Airways simply contracted with the county to manage and operate the county's airport, as its agent, for public and governmental purposes, as outlined under *Code* § 11-202." The county was not required to construct or maintain an airport any more than the City of Atlanta would be required to care for the poor. See

*Aven v. Steiner Cancer Hospital, Inc.*, 189 Ga. 126, 140, supra, where it was said: "The charter of the city provides that 'The mayor and general council shall have full power and authority to pass all by-laws and ordinances respecting . . . care of the poor.' . . . It is not a command." Since under the allegations of the petition, including the exhibits attached thereto, the airport was not constructed or operated by the county in its proprietary capacity, and since the lease was not made by the county in its proprietary capacity, the lease in question, seeking to bind future governing bodies of the county, not only to operate an airport, but to permit the lessee to operate the airport, was void and the trial court did not err in so holding in its judgment granting the county's motion for a summary judgment.

■ In division 7 the majority opinion properly recognizes that the agreement in the contract whereby the county agreed to furnish Southern Airways Company with water and sewage facilities without charge is void, but the holding that this consideration is severable from the remainder of the contract so that only this part of the contract would be void is untenable.

ON MOTION FOR REHEARING.

BELL, Judge. ■ In its motion for rehearing, the county urges that this court overlooked the decision in *Purser v. Dodge County*, 188 Ga. 250 (3 S. E. 2d 574), which held that a county is not liable for a suit for any cause of action unless made so by statute. As we construe the Uniform Airports Act, *Code* Chapter 11-2, which expressly extends its coverage to counties, as shown in the original opinion, the county is authorized to contract as it did here. The logical inverse inference of the act is that, to the extent the county is authorized to contract, it also may be sued upon the contract for breach or for interference with performance.

■ The county urges in its motion that since the contract under review provides that Southern Airways shall have the exclusive right to use this airport and its facilities to operate a flying school, this violates 49 U.S.C.A. § 453, which forbids the granting of an exclusive use of landing areas and air navigation facilities of an airport built with Federal funds. While the conduct of a flying school necessarily uses landing areas

and air navigation facilities, other portions of the contract, as discussed in the main opinion, require the lessee to make all facilities, including airline transportation facilities, at the airport available to all members of the public, and expressly negate any grant to the lessee or to any other person of an exclusive right of the use of any landing area or air navigation facility. As clause 29 of the contract provides in part, ". . . the landing areas and air navigation facilities of said airport shall always be open and available to all airline companies without discrimination." If there is any conflict between the grant of the exclusive right to operate a flying school, which we do not feel to be the case, and the other provisions of the contract which require that the facilities be made available to all on an equal basis to the extent that a portion of the contract would become illegal, it yet would yield to that part of the contract which is legal. "If the contract be severable, that which is legal will not be annulled by that which is illegal." *Code* § 20-501. Since we have interpreted this contract as being severable, this principle applies equally to the grant of the exclusive privilege of operating a flying school. Accordingly, we have expressly held that this grant of an exclusive right to operate a flying school does not conflict with the Federal statute cited.

■ It is further contended by the movant county that the lease in question is void as being in restraint of trade, granting exclusive rights to property over which the county has the power of eminent domain, and is against public policy. As we read the contract, there is nothing in it to violate the public policy of the State, particularly in view of the Uniform Airports Law duly enacted by the General Assembly and approved by the Executive, which expressly authorizes the type of contract here in dispute. The provision in the lease providing in substance that in the event additional hangars or buildings are constructed on the premises by the lessor, the lessee shall have the option to rent them at the highest bona fide offer obtained by the county from third parties, while it may be subject to criticism as an unwise business venture, does not vitiate the contract. The insertion of this provision by the administrative authority of the county in negotiating the contract was a

matter of administrative discretion with which the court is not authorized to interfere.

■ A strenuous attack is made by the county upon the holding in the main opinion that the consideration is severable, the contention being that in view of our holding that the provision of the contract to furnish water and sewage without charge for 15 years is invalid, the whole contract should be nullified. It is urged that under the rulings in *Broxton v. Nelson,* 103 Ga. 327 (30 S. E. 38), 68 Am. St. Rep. 97 and later cases, the criterion for determining whether a contract be entire or severable is to be found in the answer to the question whether the whole quantity, service, or thing—all as a whole—is of the essence of the contract, and that if it appears that the contract was to take the whole or none, then the contract would be entire. Southern Airways, the opposing party, in its initial argument, while apparently admitting for the purpose of argument, but not conceding, that these considerations might be held by the court to be illegal, nevertheless insisted upon its remaining rights under the contract. Since the contract is severable, even if there is a partial failure of consideration because of illegality, the county here cannot object if the opposite party is willing to accept the performance of the remaining portions of the contract.

The other questions raised in the motion for rehearing, we feel, were adequately answered in the original opinion, to which we adhere.

*Motion for rehearing denied.*